**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

---------------------------------------------------------------x
In re:                                                         :
                                                               :
Uwagboe O. Oru-Lawerence,                                      : Chapter 11
                                                               : Case No. 13-17250-MSH
        Debtor.                                                :
---------------------------------------------------------------x

**REQUEST OF CERTAIN TENANTS**
**FOR ALLOWANCE AND PAYMENT OF**
**ADMINISTRATIVE EXPENSES PURSUANT TO 11 U.S.C. §503(b)**

To the Honorable Melvin S. Hoffman, Chief United States Bankruptcy Court Judge:

Darcell Hines, Joan Baez, Samantha Joutras, Francine Thurston, Richard McCray, Zachary Lane, Gerald Richardson, Timothy Smith, Tammy Strait, Dwight Sam, Fatima Morris, William Bautista, Tessy Adewumi, Miesha Warren, Troy Michael, Adryenne Furr, Felicia McLaurin, Frank Dubuisson, Angelia Brown, Charea Kersey, Clifton Townsend, Olga Rosado, Charles Gyukeri, Daniel Defaria, Sitarah Young, Starr Mosely, and Carolyn Lewis (each a "Tenant" and collectively, the "Tenants"), current tenants residing in certain residential real property owned by the debtor, Uwagaboe O. Oru Lawrence a/k/a Uwa Lawrence, Uwa Oru-Lawrence, Uwagboe Orumwense Lawrence, Uwagboe Oru-Lawrence (the "Debtor"), which residential real property is property of the Debtor's bankruptcy estate, hereby request allowance and payment of their administrative expense claims against the Debtor and his estate pursuant to 11 U.S.C. §503(b). In support of this request, Tenants state as follows, and submit the attached Declarations:

## Case Status

1. On December 19, 2013 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§101 *et seq*.

2. Although this case has been pending for nearly three years, Tenants learned of it only in May of 2016. Indeed, the existence of this case was concealed from Tenants and other tenants in the Debtor's properties: no tenant was listed in the Debtor's bankruptcy schedules; no tenant was given notice of this case; and incredibly, notwithstanding the fact that the Debtor owns and operates subsidized rental properties for low income or disabled individuals like Tenants, not a single lease was listed in the Debtor's schedules and statement of financial affairs. Counsel from Greater Boston Legal Services only learned of the chapter 11 case in the course of representing some tenants in cases pending in state court. Indeed, the Debtor had not even advised the state court of his chapter 11 case.

3. On July 6, 2016, Joseph G. Butler was appointed the Debtor's chapter 11 trustee (the "Trustee").

## The Debtor's Post-Petition Breaches of Obligations Owed to Tenant(s)

4. Since the Petition Date, each Tenant has rented an apartment (each an "Apartment") in a residential building owned by the Debtor (such buildings, collectively, the "Property"). In all but two instances, these tenancies commenced after the Petition Date.

5. Rent for an Apartment is either paid by the Tenants or on their behalf by various governmental agencies (collectively, "Agency"). These Agencies include (a) Boston Housing Authority, Cambridge Housing Authority, Somerville Housing Authority, Braintree Housing Authority, Norwood Housing Authority, Quincy Housing Authority, Framingham Housing Authority, Metropolitan Boston Housing Partnership (MBHP), and Aids Action Committee of

Massachusetts, each providing housing assistance to low-income tenants in privately-owned properties in the form of federal Housing Choice Vouchers (Section 8) or Massachusetts Rental Voucher Program (MRVP) subsidies, housing subsidies to former service members and their families through Veterans Affairs Supportive Housing (HUD-VASH) vouchers, and Continuum of Care (CoC) housing vouchers for homeless individuals with disability and their families; and (b) HomeStart, Inc. ("HomeStart") and Boston Public Health Commission ("BPHC") by providing a way out of homelessness for people with disabilities through full support services and by serving as their leaseholder in privately-owned properties as part of the Housing First Initiative.

6. Since the Petition Date, the Debtor or his estate has received rental payments for the Apartment rented by each Tenant, although in some cases, subsidized rental payments recently were stopped or temporarily reduced by the relevant Agency as the result of the Debtor's failure to keep the Property in compliance with applicable codes, rules and regulations governing health and safety (collectively, the "Codes"). Tenants understand that these payments will resume once the Property is brought into compliance with the Codes.

7. Since the Petition Date, the Debtor has breached various contractual, statutory and common law obligations owed to Tenants. As a result, Tenants have claims against the Debtor, which have arisen since the Petition Date, including for: interference with quiet enjoyment and interference with utilities, in violation of M.G.L. c. 186, § 14; breach of contract; breach of the common-law implied warranty of habitability; violation of the consumer protection act, M.G.L. c. 93A; retaliation, in violation of M.G.L. c. 186, § 18; violation of the security deposit and last month's rent law, M.G.L. c. 186, § 15B; negligent and intentional infliction of emotional

distress; unjust enrichment; negligence; fraud; subsidy discrimination, in violation of M.G.L. c. 151B, § 4; and breach of the covenant of good faith and fair dealing.[1]

8. As a direct consequence of Debtor's violation of the above-cited contractual, statutory, and common-law obligations, Tenants have incurred damages of at least $2,068,067, exclusive of attorney's fees and costs, a figure which is also likely to be substantial.[2] As many of the Tenants' claims are related to conditions of disrepair in their respective Apartments which are ongoing, the damages figure will likely increase until the Apartments, and the Property, are brought into compliance with relevant Codes.

9. In addition, should the Property be sold in a transaction that results in the termination of the Tenant(s)' housing subsidy, Tenant(s) will have claims against this estate for loss of his/her/their subsidized housing and associated damages from the resulting homelessness. Residential rental housing stock in the Boston area is scarce; and there is little or no alternative affordable housing available to Tenants other than the Apartments in which they currently live.

10. In support of their claims, the Tenants have attached a Declaration from each Tenant stating relevant corroborating facts, as well as a spreadsheet detailing the damages calculations. The Declarations detail, among other things, the Tenant's address, the contract rent

---

[1] Although a small number of the Tenants rented from the Debtor as subtenants of either BPHC or HomeStart, their subsidy provider, these Tenants are nevertheless entitled to assert claims arising out of the tenancy directly against the Debtor, as intended beneficiaries of the leasehold between the Debtor and their subsidy provider. Massachusetts follows § 302(1)(b) of the Restatement (Second) of Contracts, under which a person may sue as a third-party beneficiary to a contract where the language and circumstances of the contract indicate the contracting parties' intention to provide the third party with the benefit of the promised performance. *See, e.g., Spinner v. Nutt*, 417 Mass. 549 (1994). Here, the language and circumstances of the "Master Leases" signed between the Debtor and either BPHC or HomeStart indicated that the Debtor's obligation to maintain the leased premises in a safe and habitable condition was intended by the parties to benefit the particular *clients* of the respective subsidy providers who would actually be living on the premises.

[2] The vast majority of relevant landlord-tenant provisions the Debtor violated in his capacity as the Tenants' residential landlord provide for a mandatory award of attorney's fees, including the quiet enjoyment statute, M.G.L. c. 186, § 14; the Consumer Protection Law, M.G.L. c. 93A; and the security deposit law, M.G.L. c. 186, § 15B.

4

for the Apartment since the Petition Date, and the Debtor's post-petition breaches of his obligations owed to Tenant. The exhibit numbers for each Tenant's Declaration are as follows:

| Name | Exhibit No. |
|---|---|
| Darcell Hines | 1 |
| Joan Baez | 2 |
| Samantha Joutras | 3 |
| Francine Thurston | 4 |
| Richard McCray | 5 |
| Zachary Lane | 6 |
| Gerald Richardson | 7 |
| Timothy Smith | 8 |
| Tammy Strait | 9 |
| Dwight Sam | 10 |
| Fatima Morris | 11 |
| William Bautista | 12 |
| Tessy Adewumi | 13 |
| Miesha Warren | 14 |
| Troy Michael | 15 |
| Adryenne Furr | 16 |
| Felicia McLaurin | 17 |
| Frank Dubuisson | 18 |
| Angelia Brown | 19 |
| Charea Kersey | 20 |

| | |
|---|---|
| Clifton Townsend | 21 |
| Olga Rosado | 22 |
| Charles Gyukeri | 23 |
| Daniel Defaria | 24 |
| Sitarah Young | 25 |
| Starr Mosely | 26 |
| Carolyn Lewis | 27 |

The damages spreadsheet is attached as Exhibit 28.

### These Claims for Breach Are Administrative Expenses

11. These claims by Tenants against the Debtor and his estate based on post-petition breaches of obligations owed to Tenants are entitled to priority as administrative expenses under 11 U.S.C. §503(b).

12. A claim qualifies for administrative expense "if (1) the right to payment arose from a postpetition transaction with the debtor estate, rather than from a prepetition transaction with the debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of the debtor." *In re Hemingway Transp., Inc.*, 954 F. 2d 1, 5 (1stCir. 1992), cert. denied, 510 U.S. 914(1993). "With respect to an executory contract, the focus is on whether the debtor *used* the nondebtor's property in the ordinary course of its business, and continued to receive and accept the nondebtor's performance." *In re Enron Corp.*, 279 B.R. 79, 87 (Bankr. S.D.N.Y. 2002) (*citing In re Patient Educ. Media*, 221 B.R. 97, 102 (Bankr. S.D.N.Y. 1998) (emphasis in the original) (internal quotations omitted); *see also In re Mammoth Mart Inc.*, 536 F.2d 950, 954 (1st Cir. 1976) (the proper focus in determining whether a creditor's claim arose out of a

6

transaction with the estate is whether the debtor in possession "induced" the post-petition transaction); *Adelphia Business Solutions, Inc.*, 296 B.R. 656, 665 (Bankr. S.D.N.Y. 2003) (the "inducement" requirement must be construed with "common sense" to "*require* administrative expense treatment where the post-petition benefit is *knowingly accepted and desired,* post-petition, by the post-petition debtor-in-possession.") (emphasis added).

13. The claims of each Tenant easily satisfy these requirements for administrative expense priority. The Debtor was in the business of leasing property to Tenants (among others) and, after the Petition Date, "he continued to receive and accept the nondebtor's performance" in the ordinary course of his business. *Enron*, 279 B.R. at 87. Tenants lived in the property pursuant to tenancies that commenced after the Petition Date, or in two instances, pursuant to unexpired leases of residential real property that were entered into prior to the Petition Date. In either circumstance, the continued residency by Tenants and the payments to the Debtor were transactions which, from every practical perspective, were "induced" by the Debtor. *Mammoth Mart*, 536 F.2d at 954. The Debtor was paid rent, and "knowingly accepted and desired" this rent, from each Tenant post-petition. *Adelphia*, 296 B.R. at 665. And, it is beyond dispute that the rent paid "was beneficial to the estate of the debtor," as he kept the payments. *Hemingway Transp., Inc.* 954 F. 2d at 5.

## Conclusion

14. The claims of each Tenant arose on or after the Petition Date, from post-petition transactions with the Debtor, where the Debtor accepted and retained payment in exchange for his promise to provide fully-compliant housing to Tenant and not to breach contractual, statutory and common law obligations owed to Tenants. That each Tenant is vulnerable, low income or mentally or physically challenged and that these breaches continue, make the Debtor's failure to

7

provide Tenants with compliant housing and his affirmative breach of basic obligations owed to them even more egregious. Seeking Chapter 11 protection did not give the Debtor license to breach his post-petition obligations to Tenants. And, the claims arising from those breaches are administrative expense claims under 11 U.S.C. §503(b).

### Relief Requested

**WHEREFORE,** each Tenant requests that the Court:

A. Find that the claims against the Debtor and his estate for breach are entitled to administrative expense priority under 11 U.S.C. §503(b);

B. Liquidate the amount of those claims after trial or in such amount as may be agreed to by Tenant and the Trustee;

C. Order the payment of these claims as allowed; and

D. Grant such other relief as is just and proper.

Respectfully submitted,

THE TENANTS
By their Attorneys,

*/s/  Robert Sable*
Robert Sable
Greater Boston Legal Services
197 Friend Street
9th Floor
Boston, MA 02114
(617) 603-1721
rsable@gbls.org


*/s/  Andrew M. Troop*
Andrew M. Troop
Christopher R. Mirick
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 10036
(212) 858-1000
andrew.troop@pillsburylaw.com
christopher.mirick@pillsburylaw.com