## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DISTRICT

-------------------------------------------------------------x
In re:                                          :
                                                :
                                                : Chapter 11
Uwagboe O. Oru-Lawerence,                        : Case No. 13-17250 (MSH)
                                                :
        Debtor.                                 :
-------------------------------------------------------------x

### NOTICE OF FILING OF DECLARATION IN SUPPORT OF REQUEST
### OF CERTAIN TENANTS FOR ALLOWANCE AND PAYMENT OF
### ADMINISTRATIVE EXPENSES PURSUANT TO 11 U.S.C. §503(b)

On August 26, 2016, tenants ("Tenants")[1] of certain residential real property owned by the debtor, Uwagaboe O. Oru Lawrence a/k/a Uwa Lawrence, Uwa Oru-Lawrence, Uwagboe Orumwense Lawrence, Uwagboe Oru-Lawrence (the "Debtor"), which residential real property is property of the Debtor's bankruptcy estate, filed the *Request of Tenants for Allowance and Payment of Administrative Expenses Pursuant to 11 U.S.C. §503(b)* [Dkt. No. 205] (as supplemented by the Supplement to Request for Payment, the "Request for Payment").

In support of the Request for Payment, Tenants hereby file the *Declaration of Hon. Patrick J. King (Ret.)*, attached hereto as **Exhibit 1**.

Dated: New York, New York          Respectfully submitted,
        September 30, 2016
                                   PILLSBURY WINTHROP SHAW PITTMAN NNR

                                   By: */s/ Christopher R. Mirick*
                                   Andrew M. Troop
                                   Christopher R. Mirick
                                   1540 Broadway
                                   New York, NY 10036
                                   (212) 858-1000 (Phone)
                                   (212) 858-1500 (Fax)
                                   andrew.troop@pillsburylaw.com
                                   christopher.mirick@pillsburylaw.com

---

[1] The term "Tenants" includes tenant John Conlin, as identified in the *Supplement to the Request of Tenants for Allowance and Payment of Administrative Expenses Pursuant to 11 U.S.C. §503(b)*, dated September 10, 2016 [Dkt. No. 228] (the "Supplement to Request for Payment").

## Exhibit 1

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

```
------------------------------------------------------------x
                                          :
In re:                                    :
                                          :  Chapter 11
Uwagboe O. Oru-Lawrence,                  :  Case No. 13-17250-MSH
                                          :
         Debtor.                          :
------------------------------------------------------------x
```

## DECLARATION OF HON. PATRICK J. KING (RET.)

I am a retired Superior Court judge.  I have been a member of the Massachusetts bar since 1967.  I served as an Associate Justice of the Boston Housing Court between 1977 and 1989 and as an Associate Justice of the Superior Court between 1989 and 2003, when I retired after 26 years of judicial service.  For the past 13 years, I have worked full-time as a mediator and arbitrator.  I have mediated over 100 housing related disputes.  Over the past 49 years, I have had extensive experience in housing law and consider myself an expert in Massachusetts landlord tenant law

## I.  INTRODUCTION

I have been asked by Greater Boston Legal Services ("GBLS") and the Boston Public Health Commission ("BPHC") to give an expert opinion on the valuation of certain administrative expenses requested by 32 current and former tenants ("Claimants") of residential rental units located at 91-93, 95-97, and 99-101 Waldeck Street, Dorchester (the "Waldeck Properties") which is owned by the Debtor Uwagboe O. Oru-Lawrence (the "Debtor").  I understand my opinion is for consideration of the Chapter 11 Trustee, Joseph G. Butler (the

"Trustee"), who is charged with the obligation to exercise his sound business judgment in
assessing competing bids for the Debtor's real properties, which may include the valuation of
claims of the tenants  which they are willing to waive in support of the bid of Codman Square
Neighborhood Development Corporation ("Neighborhood Development Corp.") to purchase the
Waldeck and Orlando Properties with the commitment to maintain the Waldeck and Orlando
Properties as affordable housing.  I understand that the vast majority of the tenants at the
Waldeck Properties are low-income, disabled individuals, who are black or Latino and/or
elderly, and receive housing subsidies through the Section 8 program.  Of the 32 Claimants, 2 are
clients of both GBLS and BPHC, 19 are clients of GBLS only, and 11 are clients of BPHC only.[1]


## II.     SUMMARY OF OPINION

It is my opinion that a conservative estimate conservative estimates of likely recovery by
the Claimants with respect to their separate claims based on their occupancy of the Waldeck
street property, assuming a total monthly contract rent of **$38,254,** exclusive of statutory
attorney's fees, is **$1,947,282.** This estimate is based on the following subcategories of damages:

- G.L. c. 93A  damages based on breach of Implied Warranty of Habitability:

  **$1,167,315 (3x $389,105)**;

---

[1] My valuation covers only these 32 Claimants who are clients of GBLS and/or BPHC and reside at the Waldeck Properties. Because the existence of 2 tenants who are both GBLS and BPHC clients had caused inadvertent miscalculations, I have taken care to exclude from GBLS' calculation, the claims of the 2 Claimants who are also clients of BPHC, except as to emotional distress damages, which were not claimed by BPHC for any of its clients. See Trustee's Objection to GLBS' clients' Request for Allowance and Payment of Administrative Expenses. (Doc. 232, ¶ 19). The 21 clients of GBLS are Darcell Hines, Joan Baez, Samantha Joutras, Francine Thurston, Richard McCray, Zachary Lane, Gerald Richardson, Timothy Smith, Tammy Strait, Dwight Sam, Fatima Morris, William Bautista, Tessy Adewumi, Miesha Warren, Troy Michael, Adryenne Furr, Felicia McLaurin, Frank Dubuisson, Angelia Brown, Charea Kersey, Clifton Townsend, Olga Rosado, Charles Gyukeri, Daniel Defaria, Sitarah Young, Starr Mosely, and Carolyn Lewis, and Michelle Madolo. My valuation does not include any claims of tenants residing at 25, 31, and 35 Orlando Street, Mattapan (the "Orlando Properties"), which are also owned by the Debtor. I understand future claims may be filed by other tenants at the Waldeck and Orlando Properties.

2

- Quiet Enjoyment:  **$ 229,524**, based on statutory damages of three times the contract rent for those instances where breach does not exceed minimum statutory damages;

- Security Deposit Statute:  **$ 24,015** ;

- Utilities Violations**:  $33,600**;

- Retaliation :  $  **17,043**; and

- Emotional Distress:  **$500,000**.

These estimates do not include statutory attorney's fees to which the Claimants would likely be entitled for prevailing on claims arising under G.L. c. 186, §§ 14 and 15B as well as G.L. c. 93A and do not include any damages for the loss of subsidized housing certificates that claimants risk as a result of conduct of landlord..

## III.    **BASES OF OPINION**

My opinion is informed by the following, and the application of applicable Massachusetts laws governing the rental of residential premises:

- On September 21, 2016, I visited each of the Waldeck Properties; examined the interior and exterior common areas, including the roofs, basements, rear yard, alleyways and utility meters; inspected a sample of 4 apartment in varying conditions of habitability at 91 Waldeck #1R, 93 Waldeck #1F, 95 Waldeck #GL, 95 Waldeck #3R, including internal common areas, front and rear staircases and all means of egress.

- I met with an environmental health inspector of the City of Boston Inspectional Services Department ("ISD") who affirmed the long-standing rodent infestation at the Waldeck Properties.

3

- I interviewed 4 tenants in person regarding the conditions, maintenance and repair in their apartments, provision of utilities services; common area and basement issues; appliances, rodent infestation, maintenance of facilities, the nature and quality of interactions and communications with the Debtor, and the impact of their tenancy at Waldeck Street on their health, sense of safety and well-being.

- I reviewed each of the Claimant's affidavits and supplemental affidavits, if any.

- I reviewed the records provided by the Inspectional Services and from the City of Boston public database, which included a comprehensive history of all citations and tickets issued for violations of the Sanitary and Building Codes, whether open or closed, for each of the Waldeck Properties, and all approved permit applications extending to the period before the Debtor's acquisition of the Waldeck Properties.

- I reviewed the Boston Housing Court records relating to 3 actions filed the ISD against the Debtor in 2016 to enforce code violations at 91-93, 95-97, and 99-101 Waldeck Street, respectively, bearing Boston Housing Court Docket Nos. 16H84CV0107, 16H84CV0108, and 16H84CV0109, including the Verified Complaint for Preliminary and Permanent Injunction and Alternatively, For the Appointment of a Receiver and supporting documents, Court Order for the issuance of a capias for the Debtor's civil arrest to be brought into court, and for monetary sanctions for his noncompliance with court orders.

- I reviewed the inspection reports issued by the various local housing authorities that administer Section 8 vouchers on behalf of the Claimants, a vast majority of whom are tenants under a Section 8 contract.

- I reviewed the records from Eversource and the City of Boston Water and Sewer, including notices of service termination due to the Debtor's failure to make payments.

## 1.  No Certificate of Occupancy – Illegal Subdivisions.

Under Massachusetts law, it is illegal to rent an apartment without first obtaining a certificate of occupancy. My review of the above referenced materials indicate that all but one dwelling unit at the Waldeck Properties, 101 Waldeck Street, No. 1, have been subdivided without permit and are presently not habitable under a valid certificate of occupancy.  With the exception of 101 Waldeck Street, Apartment #1, each of the 3 legitimate apartments in each of the 6 buildings had been subdivided to create 6-8 units per building, in some instances by adding one or more illegal basement units.  With the one exception, there is no certificate of occupancy for the Waldeck Properties. All of the other units were rented by the Debtor illegally.

Presently, there are three open cases filed by the City of Boston Inspectional Services Department against the Debtor with respect to the Waldeck Properties  *See* Boston Housing Court Docket Nos. 16H84CV0107, 16H84CV0108, and 16H84CV0109, as relates to the 91-93, 95-97, and 99-101 Waldeck Properties, respectively.  The Debtor is under court agreements to restore the Properties to their approved conforming use and occupancy in compliance with all applicable International Building Code and Massachusetts Stretch Energy Code requirements. This he has failed to do.

## 2.  Breach of Implied Warranty of Habitability.

In calculating damages for breach of implied warranty of habitability, an owner is typically entitled to a credit for the rent withheld or not paid.  However, the regulations

5

established by the Department of Housing and Urban Development ("HUD") do not allow

recovery of the Housing Assistance Payment ("HAP") under a Section 8 program if the HAP

payment, or any part of rent, was properly reduced, suspended or terminated by the local housing

authority ("LHA") administering the Section 8 voucher if the abatement was due to the owner's

fault in failing to repair and maintain premises in compliance with the Housing Quality

Standards.  The large majority of tenants at Waldeck hold Section 8 vouchers.  Some number of

their HAP payments may have been suspended or terminated due to the conditions at the

Waldeck Properties.

It is my opinion that if the Claimants have been rented premises that from inception

were not and could not be certified for occupancy as residential premises—for example, due to

the lack of a second means of egress which renders the remises dangerous to health and safety,

the rental value of such condemnable unit is zero, and the owner is not entitled to any offset for

rents withheld or not paid.  Hemingway, 363 Mass. 184, 200 n. 16 (1973) ("There may be

instances where conditions not covered by the [State Sanitary] Code regulations render the

apartment uninhabitable…. regardless of whether a sanitary code violation existed or not,"

because "the protection afforded by the implied warranty or habitability does not necessarily

coincide with the [State Sanitary] Code's requirements.").  Other sources of law that are not *per

se* breaches of the warranty of habitability but set minimum standards of safety that may be

considered, include the State Building Code.  "We now find in the rental of a dwelling unit,  …

an implied agreement by the landlord that the rented unit complies with the minimum standards

prescribed by building and sanitary codes and that he will do whatever those codes require for

compliance during the term of the renting." Crowell v. McCaffrey, 377 Mass. 443, 451 (1979)

(emphasis added) (observing that the "implied warranty of habitability" is a multi-faceted legal

concept that encompasses contract and tort principles, as well as the state building and sanitary codes"); Scott v. Garfield, 454 Mass. 790 (2009) (whether defective porch that caused injury to guest was vital to use of premises not required for breach of implied warranty of habitability).

I observe that since the Debtor acquired the Waldeck Properties in 2008, no work was performed with any required permits or inspections, and to the extent any repair or renovation work has been done in recent years, they were not completed in a workmanlike manner in conformity with applicable sanitary, building and other codes designed to ensure the basic health and safety of occupants in residential leased premises.  It is therefore my opinion that owing to the long-standing and continuing Sanitary and Building Code violations, the nature of which endanger or impair the health, safety, and well-being of the occupants,[2] including the extensive cross-wiring and metering  and insufficient plumbing, heating, and electrical systems, the tenant's physical use and enjoyment of the premises have been impaired substantially. For this, the Claimants are entitled to damages representing the difference between the condition of the apartment as warranted (I assume the contract rent represents the fair renal value of the units as warranted) and the value of the premises in the defective condition from the inception of their tenancy to when repairs are made,[3] damages for breach of the warranty of habitability are likely to be at least $389,105.A breach of the warranty of habitability under the circumstances of this

---

[2] Every landlord that rents residential property in Massachusetts warrants  to deliver and maintain the premises in a safe and habitable condition, which at a minimum means in conformity with the State Sanitary Code and local health regulations. Hemingway, 363 Mass. 184, 200 n. 16 (1973). "

[3] The measure of damages  for breach of warranty of habitability is the difference between the value of the dwelling as warranted, and the value of the premises in the defective condition, Darmetko v. Boston Housing Authority, 378, Mass. 758 (1979); Hemingway, 363 Mass. 184, 215-219, 293 (1973).  The rent agreed upon is evidence of the value of the premises as habitable.   In the case of tenancies under subsidies, damages for breach of implied warranty of habitability is awarded and based on the full contract rent and not just the portion of the rent that the tenant paid personally. Cruz Management Co. v. Wideman, 417 Mass. 771 (1994).

case also constitute an unfair and deceptive trade practice under G.L. c. 93A. Under this statute,

damages may be either doubled or trebled. On the egregious facts of this case, I believe damages

should be trebled for a total sum of damages under Chapter 93A for the warranty of habitability

claims of $ 1,167,315.[4] The record supports the finding that the Debtor willfully and knowingly

persisted in a course of wrongful conduct of imposing serious health and safety risks by creating

more illegal units without the basic requirement of a second means of egress, wholly undeterred

by the numerous citations for Code violations and Stop Work orders, most of which remain open

to this date,[5] or even court actions enjoining him from his illegal activities at the Waldeck

Properties. Indeed, the Court issued a capias for the Debtor and his counsel's civil arrest, as well

as daily monetary sanctions, when the Debtor and his counsel refused to appear in the Boston

Housing Court in relation to the City's actions, as well as the action of at least one of the

Claimants who remains without electricity, heat and hot water since December, 2015.

Further, I note that among the many Sanitary Code violations I observed and which are

more comprehensively identified by the Claimants in their respective affidavits filed in support

of their request for administrative expenses,[6] there is a long-standing and serious rodent

infestation throughout the Waldeck Properties that pose a daily health and safety hazard for each

Claimant, many of whom are elderly, disabled, and on very limited fixed incomes, and for whom

---

[4] Wolfberg v. Hunter, 385 Mass. 390, 399-400 (1982) ("We hold … that, where tenants … prevail in a claim for damages under G.L. c. 93A, their damages under G.L. c. 93A shall be calculated by determining the rental value of the unit as warranted-the agreed rent-minus the value of the unit in a defective condition, plus any reasonable expenses incurred by the tenants as a result of the defective condition" and "[f]rom this figure, the total amount of rent withheld [if any] shall be subtracted to prevent an excessive recovery" rather than denying all recovery under G.L. c. 93A for those months during which rent was withheld).

[5] Specifically, as of this report, there were at least 10 open citations for 91 Waldeck, 18 for 93 Waldeck, 13 for 95 Waldeck, 16 for 97 Waldeck; 12 for 99 Waldeck; and 18 for 101 Waldeck.

[6] I credit the list of material Sanitary Code violations identified by each Claimant in their respective affidavits, which are consistent with my personal inspections of the Waldeck Properties and interviews of certain Claimants in their apartments.

taking the necessary preventative and remedial steps to mitigate the impact on their food expenses alone poses a very substantial hardship.  The seriousness of this rodent infestation was corroborated by the City's Environmental Inspector during my visit to the Waldeck Properties. For example, most of the plastic trash receptacles at the rear of the premises had large holes chewed through the plastic by rats. Claimants are fearful of using the trash receptacles because of the rats feasting on the garbage in the trash receptacles.

While it is not relevant whether the landlord is at fault or has taken reasonable steps to repair because a landlord is strictly liable under the doctrine of the implied warranty of habitability, Berman & Sons v. Jefferson, 379 Mass. 196 (1979), it is my opinion here that Debtor knowingly and willfully created illegal apartments that lacked the basic safeguard of a second means of egress, and knowingly placed tenants in such dwellings, exposed them to a serious threat to health, safety, and well-being.  Many of the tenants are disabled and elderly-- including some who are legally blind, mobility restricted, pregnant, and caring for young children.

Many Claimants are Section 8 tenants, and under HUD regulation, tenants will automatically lose their Section 8 voucher "180 calendar days after the last [HAP] assistance payment to the owner."  24 CFR 982.455. Since the tenants have not yet lost their subsidies, it is difficult to assess what those damages are likely to be. Nonetheless, those damages are likely to be substantial and could easily exceed over one million dollars.

I note that it is no longer correct law that "tenant shall not be awarded damages in excess of the rent actually paid by him," as a tenant is not to be denied recovery of the full amount of such damages by reason of having paid rent to which a landlord may not have been entitled during the period of his occupancy of the premises in which substandard conditions existed that

impair the health and/or safety of the occupants.[7]  Sometimes the value of the leased premises

may be zero.  See, e.g., Haddad v. Gonzalez, 410 Mass. 855 (1991) (rejecting position

articulated in Simon v. Solomon, 385 Mass. 91 (1982) that damages greater than the amount of

rent paid by a tenant is a windfall to a tenant).  Haynes v. Crockett, 2009 Mass. App. Div. 178, *

3 (2009) (recognizing that the fair rental value of illegal apartment lies within the discretion of

the trial court judge).


## 3.   Breach of Covenant of Quiet Enjoyment.

My estimate for damages of $229,524 for breach of the covenant of quiet enjoyment and

under G.L. c. 186, § 14, assumes that, on average, each tenant experienced at least two incidents

where the conditions in their apartments, typically no heat, hot water  or electricity but also

including transference of the responsibility for payment of any utility services to the Claimants

without their knowledge or consent, or otherwise failing to assume responsibility for the payment

of gas, electricity and/or heat in the Claimant's dwelling unit that were the owner's responsibility

to pay.[8]  Based on the available evidence, this is an extremely conservative estimate. Insofar as

there is a cause of action for both the breach of warranty of habitability and covenant of quiet

enjoyment arising out of the same violations of the State Sanitary and Building Codes which

seriously impair the health and safety of the occupants of Waldeck Properties, Claimants may

recover only one damage, whichever is higher, under either theory.  In my opinion, I have not

---

[7] Tosi v. Adams, 424 Mass. 1001, n. 22 (overturning this last sentence in McKenna v. Begin (I) at 174.  See also Haddad v. Gonzalez, 410 Mass. 855, 872–873 (1991) (rejecting position articulated in Simon, at 110 n. 13 suggesting that damages greater than amount of rent paid by tenant may be windfall to tenant).

[8] There is extensive evidence of the Debtor charging the Claimants with common area electrical charges. For example, none of the common area electrical meters had electricity flowing through them which means that tat one of the Claimants in each unit had their electricity wired to the common areas. In addition, many tenants appeared to be paying for electricity used by other units because of the haphazard manner in which the units were wired.

included damages under Chapter 93A relating to conditions where those conditions also constitute a breach of the covenant of quiet enjoyment.

I also credit the allegations in the Claimants' affidavits of repeated incidences of intentional shut off or interference with the hot water, electricity, heat and other utilities by the Debtor, his refusal to repair the ineffective or insufficient electrical, hot water, heating and plumbing systems to provide for adequate utilities services, which are his statutory responsibility to provide, and in some circumstances, his intentional termination or removal of the same so as to harass and intimidate tenants to effect a constructive eviction. I have personally corroborated the on-going lack of electrical services to at least one unit (which also implicates the Claimant's electrical heat), due to the Debtors' intentional acts in the basement, where the circuit breakers are kept locked against access by the tenants.

## 4.  Utilities Violations under State Sanitary Code.

Independent of recovery under the quiet enjoyment statute, G.L. c. 186, § 14, some Claimants identified in the Request for Administrative Expenses are entitled to an independent recovery for utilities costs in the reasonable estimated amount of $ **11,200** under the State Sanitary Code and G.L. c. 93A for the full amount of gas and electric costs imposed on them in the absence of a written rental agreement that makes it the tenant's responsibility to pay for electricity and gas services to their dwelling units.[9]  This damage may be trebled under certain

---

[9] 105 CMR 410.190, 410.201, 410.354.  105 C.M.R. §410.354(A)(2). Any oral agreement by the tenants to pay for electricity or gas in violation of 105 C.M.R. § 410.354(A)(2) is invalid. Lezberg v. Rogers, 27 Mass. App. Ct. 1158 (1989); Knott v. Laythe, 42 Mass.App.Ct. 908 (1997) (rescript) (landlord liable for actual or multiple damages and attorney's fees for requiring tenant to pay electrical charges without written agreement); Young v. Patukonis, 524 Mass.App.Ct. 907 (1987).   Whether the tenant has yet paid his or her utilities bill in full is not a bar to her recovering damages for the full extent of her liability to the utility service provider.  Stan Cross Buick, Inc. v. Concord Auto Auction, Inc., 350 Mass. 14, 16 (1965) ("Where damages include indemnity against expense

circumstances if the landlord's failure to take responsibility for utility services in violation of the State Sanitary Code is willful or intentional, and at a minimum entitles the Claimant to recover the nominal statutory damages in the amount of $25.00, as well as associated attorneys' fees under G.L. c. 93A.  On the facts of this case, awarding treble damages of $33,600 is appropriate.

### 5. Security Deposit and/or Last Month's Rent.

Certain Claimants are be entitled to damages under security deposit statute, G. L. c. 186, § 15B, in the claimed amount of $**24,015** because they paid security deposits and the Debtor failed to comply with the statute.  A security deposit continues to be the property of the tenant making such deposit, and "shall not be commingled with the assets of the lessor, and shall not be subject to the claims of any creditor of the lessor or of the lessor's successor in interest, including a foreclosing mortgagee or trustee in bankruptcy," but must be kept in a separate interest-bearing account protected from the landlord's creditors.  G.L c. 186, 15B.  A landlord's violation of the security deposit statute, G. L. c. 186, § 15B, including failure to provide written notice of the name and location of the bank at which the deposit is held and pay the tenant interest year, "is encompassed within the definition of a counterclaim or defense in G. L. c. 239, § 8A," and entitles the Claimant not only to the immediate return of the deposit, but also to "treble damages, interest, costs and attorney's fees" regardless of whether violation was innocent or willful, if the landlord refuses to acknowledge.[10]

---

occasioned by a wrong . . .  a plaintiff may recover for obligations incurred whether he has satisfied them or not."), quoting Arwshan v. Meshaka, 288 Mass. 31, 34 (1934).

[10] Meikle v. Nurse, 474 Mass. 207 (2016);  Catenholz v. Caira, 21 Mass. App. 758, 764 (1986).

## 6.  Retaliation.

I find that at a minimum, recovery for retaliation in the amount of **$ 17,043** may be had by Ms. Hines, Mr. Bautista, Mr. Conlin, Ms. Lewis, and Ms. Madolo, who have been served with a notice of termination of tenancy and/or summary process complaint in reprisal for the termination of their Section 8 subsidy payments due to the Debtor's own failure to make repairs to correct long-cited and standing code violations, and in Ms. Modolo's case constructively evicted.  Under G.L. c. 186, § 18 , any substantial alteration in the terms of the tenancy after the tenant has exercised or attempted to exercise such rights, including the sending of a notice to quit, is presumed to be retaliatory if the alteration is made within six months of the tenants' exercising or attempted exercise of her rights.  Recovery of damages for retaliation may be had for emotional upset, degradation, humiliation, anxiety resulting from unlawful retaliation, without bodily injury and without proof by expert opinion testimony of any psychic harm. Based on my review of the Claimants' affidavits, I anticipate that there are many other Claimants who would be able to establish that the Debtor took reprisal against them for exercising their rights as tenants, including reporting conditions in need of repair and participating in a tenant's organization/association. Such claimants likewise would be entitled to damages that is the greater of actual damages, or the statutory damages in the amount of not less than one month's rent and not more than three months' rent.[11]

---

[11] G.L. c. 186, § 18; 940 C.M.R. § 3.17(6)(b) (reprisal and retaliation violates 93A); Haddad v. Gonzalez, 410 Mass. 855, 859, 864–72 (1991); Ianello v. Court Management Corp., 400 Mass. 321 (1987) (recovery for retaliation against tenant organizing activities under G.L. c.186 § 18 not duplicative, but limited to one month's rent as a matter of law, where tenant also recovered for the same lockout under G.L. c.186 § 14); Gardner v. Governor Apartments Associates, 396 Mass. 661, 665 (1986); Wolfberg v. Hunter, 385 Mass. 390, 391, 394 (1982) (recovery under G.L. c.186, § 18 for tenant union activity); Bournewood Hospital, Inc. v. MCAD, 371 Mass. 303, 313–17 (1976);.Jablonski v. Clemons, 60 Mass.App.Ct. 473, 476–78 (2004); Power and Power v. Fox, Worcester Housing Court, 2005 WL 4890498 (Sullivan, J., Mar. 29, 2005) (finding insufficient evidence for landlord to rebut presumption of retaliation of reporting suspected violations at the premises to government agencies and awarding three months' rent).

**7.  Emotional Distress.**

It is my opinion that Claimants will recover well in excess of $ **500,000** for emotional

distress claimed in their Request for Administrative Expenses. The conduct of the Debtor

includes causing significant emotional injuries including , among other things, attempting to

deprive the tenant of possession of the apartment without judicial process for possession,

including through harassing acts and threats of eviction, attempting to lock out or interfere with

the tenant's full use of or access to their possessions, furnishings, appliances and the like, and

entering the tenant's apartment without notice, permission or at unreasonable times for reasons

other than actual emergencies or as provided by law.[12]  In all probability, should the Claimants in

fact lose their Section 8 vouchers and/or become homeless as a. foreseeable consequence of the

Debtor's misconduct, it is likely that reasonable damages for emotional distress would increase

substantially. I spoke to one Claimant who was terrified and forced to move to a shelter after the

Debtor trashed her apartment and removed her appliances in reprisal for exercising her rights. I

visited another Claimant who has been without electricity, except in her bathroom, because the

Debtor shut her power off in retaliation for her exercising her rights.[13] The outrageous conduct of

the Debtor coupled with the severe emotional harm suffered by the tenants makes it likely that

the $500,000 value I have assigned to these claims is on the very conservative side.

---

[12] G.L. c. 239, § 8A; G.L. c. 186, §. 14; G.L. c. 93A; 940 C.M.R. 3.17(6)(e); Ianello v. Court Mgmt. Corp., 400
Mass. 321, 324 (1987); Strycharski v. Spillane, 320 Mass. 382 (1946); Simon v. Solomon, 385 Mass. 91, 102 (1982)
(affirming a jury award of damages for emotional distress under G.L. c. 186, § 14); Cruz Management Co., Inc. v.
Thomas, 417 Mass. 782. (1994); Darmetko v. Boston Housing Authority, 378 Mass. 758 (1979).

[13] The electricity remained on in her bathroom apparently because it is on another unit's circuit.

14

## III.   **CONCLUSION**

Based on the foregoing, it is my opinion that Claimants are entitled to a reasonable claim

of administrative expenses of $1,947,282, prior to including any estimates of emotional distress

beyond what was claimed in the original administrative expense filing and excluding attorney's

fees.

Signed under the pains and penalties of perjury this 28th day of September, 2016,

/s/ **PATRICK J. KING**
Hon. Patrick J. King (Ret.)
56 Thomas Park
Boston, MA  02127
kingpj@rcn.com

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 30th day of September 2016, I caused true and correct copies of the foregoing document to be served via ECF on all parties registered to receive ECF notices in this case, and via first class mail, postage prepaid, on the Ugtxkeg'Nku'cwcejgf''j gtgvq0'

Dated:  New  York,  New  York
          September 30, 2016

Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN ''NNR

By: <u>/s/   Christopher R. Mirick</u>
Christopher R. Mirick
1540 Broadway
New York, NY 10036
(212) 858-1000 (Phone)
(212) 858-1500 (Fax)
christopher.mirick@pillsburylaw.com

## SERVICE LIST

Boston Gas
300 Erie Blvd W
Syracuse, NY 13202-4201

Brookline Bank
P.O. Box 2130
Buffalo, NY 14231-2130

CSC Logic
PO Box 1518
Coppell, TX 75019-1518

CWC Capital, LLC
63 Kendrick Street, Suite 1
Needham Heights, MA 02494-2708

Chase Commercial Term Lending
P.0. Box 9176
Coppell, TX 75019-9176

Discover Bank
PO Box 3025
New Albany, OH 43054-3025

Dorothy Bowen
c/o Patricia A. Whiting, Esq.
Harvard Legal Aid Bureau
23 Everett Street
Cambridge, MA 02138-2735

Focus Receivables Management LLC
1130 North Chase Parkway STE 150
Marietta GA 30067-6429

Greentree Servicing LLC
Bankruptcy Department
P O Box 6154
Rapid City SD 57709-6154

Holbrook Coorperative Bank
95 N. Franklin Street
Holbrook, MA 02343-1595

Home Depot/CitiBank
P.O. Box 6497
Sioux Falls, SD 57117-6497

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA 19101-7346

JPMorgan Chase Bank, N.A.
c/o White & Williams LLP
1650 Market Street, Suite 1800
Philadelphia, PA 19103-7304

Massachusetts Department of Revenue
Bankruptcy Unit
P.O. Box 9564
Boston, MA 02114-9564

Matthew P. Fitzsimmons, Esq.
25 Mid-Tech Drive
Suite F
West Yarmouth, MA 02673-2583

Melinda Stewart
112 Water Street, Suite 203
Boston, MA 02109-4225

Monica Long
99 Waldeck Street, #1
Dorchester, MA 02124-1337

NSTAR Gas Company and
NSTAR Electric Company
Attn Legal Collections
1 NSTAR Way NW 220
Westwood MA 02090-2341

RBS Citizens
1000 Lafayette Gill
Bridgeport, CT 06604-4725

Carolyn Lewis
101 Waldeck Street #2R
Dorchester, MA 02124-1336

Dania Rosario
25 Orlando Street #1
Dorchester, MA 02126-1768

Darcell Hines
93 Waldeck Street 1F
Dorchester, MA 02124-1330

Uwagboe O. Oru-Lawrence
35 Orlando Street, Unit 6
Mattapan, MA 02126-1771


Paula R.C. Bachtell
U.S. Department of Justice
Office of the United States Trustee
John W. McCormack Post Office and
Courthouse
5 Post Office Square, Suite 1000
Boston, MA 02109-3934

Eric K. Bradford
Office of the United States Trustee
5 Post Office Square
10th Floor, Suite 1000
Boston, MA 02109-3934

David B. Chaffin
White and Williams LLP
99 Summer Street
Suite 1530
Boston, MA 02110

Ronald W. Dunbar, Jr.
197 Portland Street
5th Floor
Boston, MA 02114

John Fitzgerald
Office of the US Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA 02109

William Bautista
93 Waldeck Street #1
Dorchester, MA 02124-1330

Boston Water and Sewer Commission
Jorge A. Porras, Esq.
BWCS 980 Harrison Avenue
Boston, MA 02119

Katherine R. Ward
c/o Stephen R. Whitman Esq
197 Portland Street
Boston, MA 02114

Jason Giguere
Harmon Law Offices, P.C.
P.O. Box 610389
Newton Highlands, MA 02461

John Houton
CITY OF BOSTON
ASSISTANT CORPORATON COUNSEL
CITY HALL ROOM M-5
ONE CITY HALL SQUARE
BOSTON, MA 02201

Joshua Krefetz
Krefetz, Seed & Chan
244 Brighton Avenue
Suite 105
Allston, MA 02134

Timothy M. Mauser
Law Office of Timothy Mauser, Esq.
Suite 410
10 Liberty Street
Danvers, MA 02108

Matthew J. McGowan
Salter, McGowan, Sylvia & Leonard, Inc.,
321 South Main Street
Suite 301
Providence, RI 02903

3

Joseph G. Butler
Law Office of Joseph G. Butler
355 Providence Highway
Westwood, MA 02090

Richard T. Mulligan
Harmon Law Offices, P.C.
P.O. Box 610389
Newton Highlands, MA 02461-0345

Robert Sable
Greater Boston Legal Services
197 Friend Street
Boston, MA 02114

Thomas M. Pinney
White and Williams L.L.P.
1650 Market Street
Suite 1800
Philadelphia, PA 19103

James Southard
PO Box 540540
Waltham, MA 02454

Aeneas 4 LLC
c/o George Dabney
Pangea Management Corporation
891 Centre Street, Lower Level
Jamaica Plain, MA 02130