**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

---------------------------------------------------------------x
:
In re:                                                                                  :
                                                                                           :   Chapter 11
Uwagboe O. Oru-Lawrence,                                        :   Case No. 13-17250-MSH
                                                                                           :
            Debtor.                                                           :
---------------------------------------------------------------x

**TENANTS' MEMORANDUM REGARDING THE TRUSTEE'S BUSINESS JUDGMENT AND THE COURT'S DISCRETION TO CONSIDER THE PUBLIC INTEREST BENEFITS OF A SALE PURSUANT TO 11 U.S.C. § 363**

To the Honorable Melvin S. Hoffman, Chief United States Bankruptcy Court Judge:

**I.      INTRODUCTION**

In response to the Court's request at the hearing on September 13, 2016, the current and former tenants (the "Tenants")[1] residing, pursuant to written leases, in residential property located in Boston, Massachusetts known and numbered as (i) 25, 31-35 Orlando Street and (ii) 91-93, 95-97, and 99-101 Waldeck Street (collectively, the "Property") owned by the Debtor, submit this memorandum supporting the Trustee's and the Court's consideration of the "intangible" or social purpose benefits associated with the pending offer to purchase the Property by Codman Square Neighborhood Development Corporation ("Neighborhood Development Corp."). Submitted with this Memorandum and incorporated herein are three affidavits of Hed Ehrlich, David Thomas of the Boston Public Health Commission ("BPHC"), and Sheila A. Dillon of the Department of Neighborhood Development of the City of Boston (the "City").

---

[1] The Tenants are Darcell Hines, Joan Baez, Samantha Joutras, Francine Thurston, Richard McCray, Zachary Lane, Gerald Richardson, Timothy Smith, Tammy Strait, Dwight Sam, Fatima Morris, William Bautista, Tessy Adewumi, Miesha Warren, Troy Michael, Adryenne Furr, Felicia McLaurin, Frank Dubuisson, Angelia Brown, Charea Kersey, Clifton Townsend, Olga Rosado, Charles Gyukeri, Daniel Defaria, Sitarah Young, Starr Mosely, Carolyn Lewis, John Conlin, and Michele Madolo.

Pursuant to 11 U.S.C. § 363, the chapter 11 trustee, Joseph G. Butler (the "Trustee"), is charged with the obligation to exercise his sound business judgment in assessing competing bids. The Trustee's business judgment takes on special significance here, where the Neighborhood Development Corp. bid includes a commitment to maintain the Property as affordable housing, and, depending upon the progression of the bidding process, the Tenants' and BPHC's willingness to compromise, waive, or withdraw their $3 million of administrative claims.

The cash portion of the Neighborhood Development Corp. bid satisfies the interests of secured creditors with adequate reserves to provide for the payment of the Trustee's reasonable expenses of administration. Further, in view of the prolonged duration of this chapter 11 case and the Debtor's persistent failure to fulfill his basic responsibilities as the landlord of the Property, the Tenants and BPHC now represent the largest group of unsecured creditors holding administrative expense claims. As a result, not only is the transfer of the Property to a purchaser committed to safe, habitable affordable housing in the best social interest of the Tenants, BPHC and the citizens of Boston, but it also reflects the wishes of the most significant economic stakeholder in these cases after the secured creditors who will be paid in full in cash.

The Tenants and BPHC tenants at the Property are "some of the most vulnerable residents of the City of Boston" and include single mothers, elderly persons, veterans, students, persons who have overcome criminal records, persons with disabilities, and high utilizers of emergency services. *See* Ex. A, Ehrlich Aff. ¶¶ 6-10; Ex. B, Thomas Aff. ¶¶ 1-2. At the hands of the Debtor, they have experienced extreme and continuous dislocations and hardship arising from his abusive conduct and the Property's deplorable living conditions, which include persistent loss of heat, water and electricity, vermin infestation, broken appliances, and broken doors and windows. *See* Ex. A, Ehrlich Aff. ¶¶ 3-4. Because there are virtually no alternative

affordable housing options available to Tenants, they face the imminent risk of homelessness if the sale of the Property terminates their affordable housing. *Id.* at ¶ 5. *See* Ex. B, Thomas Aff. ¶ 10 (likelihood that BPHC's tenants obtain alternative housing "extremely remote"). A homeless shelter, practically speaking, is a best case scenario and even that option is unavailable to most of the Tenants. *See* Ex. A, Ehrlich Aff. ¶¶ 5, 7-8 (noting scarcity of available shelter beds and that admissions guidelines prioritize families with children over single adults).

The Neighborhood Development Corp. bid is the only offer that guarantees the Property will endure as a long-term source of affordable housing for current and future tenants, a life-preserving commitment which the Trustee can now separately secure and guarantee for present and future residents of the City of Boston who will depend on affordable housing.

II. **ARGUMENT**

In the exercise of his business judgment, the Trustee must consider and give meaningful credit to the non-cash components of the Neighborhood Development Corp. bid, as well as the Tenants' and BPHC's willingness separately to compromise, withdraw or waive their very substantial claims in the interests of preserving the invaluable social and public interest benefits of affordable housing. The Court, in exercising its discretion to approve the Trustee's recommendation, likewise may endorse the social purpose benefits of the sale.

    A. **When Seeking Court Approval Of A Proposed Sale, The Trustee's Business Judgment Is Entitled To Great Judicial Deference.**

In reviewing a sale pursuant to § 363, the Court defers to the business judgment of the Trustee. The Court itself does not choose the buyer outright; rather, it "sits as an overseer of the wisdom with which the bankruptcy estate's property is being managed by the trustee." *In re Aerovox, Inc.*, 269 B.R. 74, 80 (Bankr. D. Mass. 2001), quoting *In re Orion Pictures Corp.*, 4 F.3d 1095, 1099 (2nd Cir. 1993). *See In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D. P.R. 1991),

3

*vacated on other grounds*, 165 B.R. 1 (D. P.R. 1992), *aff'd in part, rev'd in part*, 983 F.2d 336 (1st Cir. 1993), quoting Daniel R. Cowans, Bankruptcy Law and Practice § 11.9 (1989) (even if sale price may be inadequate, "'court is likely to be reluctant to substitute its business judgment for that of the debtor in possession or trustee'"). Indeed, the court has "much discretion on whether to approve" the proposed sale, but the trustee's judgment "is subject to great judicial deference." *In re JDF Enterprises, Inc.*, 215 F.3d 1312, No. 99-2034, 2000 WL 560189, at *5 (1st Cir. May 1, 2000), quoting *In re WPRV-TV, Inc.*, 143 B.R. at 319. The trustee's decision will be upheld, "unless it is shown to be so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice." *In re Cadkey Corp.*, 317 B.R. 19, 22-23 (D. Mass. 2004), quoting *In re Aerovox, Inc.*, 269 B.R. at 80.

Here, deference to the Trustee's business judgment is especially critical. This case is not a "relatively straight-forward asset sale[] with simple cash offers from rival bidders." *See In re Financial News Network Inc.*, 980 F.2d 165, 169 (2nd Cir. 1992). The Neighborhood Development Corp. bid is the only bid that offers an opportunity to preserve the Property as affordable housing. It also is the only bid that combines a cash offer from a fully qualified non-profit entity with the separate commitment from creditors committed to affordable public housing to waive or resolve their substantial legal claims – claims which likely exceed all other existing or anticipated administrative expenses. *See* Objection by Certain Tenants to Chapter 11 Trustee's Proposed Sale of Real Property, and Request for Relief from Deadlines Related to the Proposed Sale at ¶ 6 (Sept. 7, 2016), Docket No. 217 (Tenants and BPHC willing to compromise certain claims "if the Trustee sells the property to a nonprofit purchaser (acceptable to Tenants) committed to preserving the Property as affordable housing").

4

The Tenants' claims against the Debtor arose since the filing of the petition, and consequently they qualify as administrative expenses. *See* Request of Certain Tenants for Allowance and Payment of Administrative Expenses Pursuant to 11 U.S.C. § 503(b) at ¶¶ 7-10 (Aug. 26, 2016), Docket No. 205.[2] Additional claims from the Tenants may arise upon the loss of affordable housing and associated damages resulting from homelessness, if a sale of the Property terminates the Tenants' housing subsidies. *Id.* at ¶ 9. The Tenants have submitted declarations containing relevant corroborating facts in support of their claims, as well as spreadsheets detailing the calculation of damages, totaling no less than approximately $2,565,433, exclusive of attorneys' fees and costs. *Id.* at ¶¶ 8-10, Ex. 28. *See* Supplement to Request of Certain Tenants for Allowance and Payment of Administrative Expenses Pursuant to 11 U.S.C. § 503(b) at ¶ 6, Ex. B (Sept. 27, 2016), Docket No. 251; Supplement to Request of Certain Tenants for Allowance and Payment of Administrative Expenses Pursuant to 11 U.S.C. § 503(b) at Ex. B (Sept. 10, 2016), Docket No. 228 (filed expert affidavits supporting requested administrative expense claims of Tenants suggest that Tenants' calculations of their claims were conservative, and that Tenants' claims may actually be proven in larger amount at trial).

BPHC also requested the allowance and payment of administrative expenses for similar claims against the Debtor, and calculated damages of no less than approximately $1,143,252. *See* Request of Boston Public Health Commission for Allowance and Payment of Administrative Expenses Pursuant to 11 U.S.C. § 503(b) at ¶¶ 13-15, Ex. 2 (Aug. 29, 2016), Docket No. 208.

---

[2] The claims include (i) interference with quiet enjoyment and interference with utilities, in violation of M.G.L. c. 186, § 14; (ii) breach of contract; (iii) breach of the common-law implied warranty of habitability; (iv) violation of the consumer protection act, M.G.L. c. 93A; (v) retaliation, in violation of M.G.L. c. 186, § 18; (vi) violation of the security deposit and last month's rent law, M.G.L. c. 186, § 15B; (vii) negligent and intentional infliction of emotional distress; (viii) unjust enrichment; (ix) negligence; (x) fraud; (xi) subsidy discrimination, in violation of M.G.L. c. 151B, § 4; and (xii) breach of the covenant of good faith and fair dealing. *See* Request of Certain Tenants for Allowance and Payment of Administrative Expenses Pursuant to 11 U.S.C. § 503(b) at ¶ 7 (Aug. 26, 2016), Docket No. 205.

The Trustee has received (i) BPHC's and the Tenants' declarations, (ii) the projected range of damages for each set of claims, (iii) the declaration of a registered sanitarian supporting Tenants' damages calculations, and (iv) the reports and recommendations of two experts, who together have substantial experience in mediating and adjudicating landlord-tenant disputes in Massachusetts Housing Court and in litigating personal injury claims. The expert reports, which have been filed with the Court in support of the Tenants' request for allowance and payment of their administrative expense claims, provide a range of estimated values of these claims for consideration by the Trustee.

As in all § 363 sales, but especially here, the Court should afford great judicial deference to the Trustee's evaluation of the non-cash features of competing bids. *See In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) (approving trustee's business judgment to select lower bid after trustee's "careful review of both the base consideration offered and an estimate of the certainty and expedition with which the transaction could be finalized"). In *Bakalis*, the court approved the trustee's selection of a lower bid, after the trustee reasonably estimated that the various contingencies, outs, and litigation risks associated with the highest bid bridged the difference in price between the two offers. *Id. See In re Volpe Industries, Inc.*, No. 13-10300, 2013 WL 4517983, at *6 (D. Mass. Aug. 23, 2013) (concluding that trustee "reasonably judged" that potential costs of "negotiations or further litigation" might "outweigh any marginally higher price obtained" from a competing bidder). In evaluating the Neighborhood Development Corp. bid against any competing bid, the Trustee similarly should exercise his business judgment to assess the combined value of the cash offer, compromise of Tenants' and BPHC's claims, and the commitment to provide enduring affordable housing.

**B.    The Value Of Preserving The Property As Affordable Housing In The City Of Boston Merits Serious Consideration by the Trustee and the Court.**

It is entirely within the Trustee's exercise of sound business judgment and the Court's broad discretion to consider the value to Tenants and BPHC, the City of Boston, and the wider community of maintaining the Property as affordable housing. Whether a sale has a sound business purpose often depends on factors other than the sale price. *See In re Volpe Industries, Inc.*, 2013 WL 4517983, at *5, quoting *In re Bakalis*, 220 B.R. at 532 (trustee must carefully weigh competing bids "'rather than mechanistically recommending the facially higher bid'"); *In re United Healthcare System, Inc.*, No. 97-1159, 1997 WL 176574, at *5 (D. N.J. Mar. 26, 1997) ("the law allows the bankruptcy court to entertain higher and better offers, which means that the bankruptcy court may not focus solely on price"); *In re Bakalis*, 220 B.R. at 533 ("a 'highest' bid is not always the 'highest and best' bid"). Indeed, a bankruptcy court may "appropriately award a bid to a lower bidder, when that lower bidder ha[s] other factors, including even an element as lacking in direct economic impact as 'societal needs,' in its favor." *In re After Six, Inc.*, 154 B.R. 876, 882 (Bankr. E.D. Pa. 1993) ("The Bankruptcy Code, like any law, must be read in its context as a tool of mankind, not a body of edicts to which mankind is a slave irrespective of its interests to the contrary.").

Satisfying this compelling public need for affordable housing is incapable of valuation. The loss of this housing stock for indigent tenants would be irreparable simply because homelessness will almost certainly result. *See* Ex. A, Ehrlich Aff. ¶ 10 (Tenants "are willing to live in deplorable housing conditions only because the alternative is an even grimmer reality"). If the Trustee accepts the Neighborhood Development Corp. offer, the intangible value of affordable housing for Tenants, BPHC, and the greater community would surely support the soundness of the Trustee's judgment. *See In re After Six, Inc.*, 154 B.R. at 882 (expressing "little

doubt" that had debtor preferred the lower but socially responsible bid, "this court should and would proceed to confirm" such sale); *In re Motors Liquidation Co*, 430 B.R. 65, 84 (S.D.N.Y. 2010) ("in connection with Section 363 sales, courts also consider the broader public interest").

Courts have taken into account the impact on affordable housing, public health, environmental safety, and employment security in approving § 363 sales. *See, e.g. In re United Healthcare System, Inc.*, 1997 WL 176574, at *5 (sound business reason for nonprofit's sale of bankrupt hospital was "to ensure attendance to critical public health needs"); *In re Coastal Industries, Inc.*, 63 B.R. 361, 369 (N.D. Ohio 1986) (in sale of assets of petroleum and chemical products transporter, court considered "environmental impact" and risk of "an accident which could also seriously endanger the public health and safety" if debtor terminated its operations); *In re Trans World Airlines, Inc.*, No. 01-00056, 2001 WL 1820326, at *14 (Bankr. D. Del. Apr. 2, 2001) (acknowledging "there is a substantial public interest" in facilitating sale of major airline, considering "the preservation of jobs for . . . 20,000 employees, the economic benefits the continued presence of a major air carrier brings to the St. Louis region, and preserving consumer confidence in purchased . . . tickets [that buyer] will assume under the sale").

In *In re Brethern Care of South Bend*, Inc., 98 B.R. 927, 930, 934-935 (Bankr. N.D. Ind. 1989), the court approved the sale of the debtor's retirement and nursing facility to a nonprofit organization that managed the debtor's property. Notably, the "well-being of the residents of the . . . facility" was of "particular concern to the court." *Id.* at 934. The court acknowledged the difficulty for the residents of not knowing the outcome of the bankruptcy proceeding, and that the residents "desire what will be in their best interests in the long-run but in addition desire that the court add stability to their lives by resolving the disposition of the . . . facility as soon as possible." *Id.* at 935. Thus, "the continuing satisfaction and ongoing beneficial treatment of the

residents of the . . . facility [was] a good business reason for the sale of [the debtor's] assets as scheduled." *Id.*

Here, the Trustee and the Court should recognize a similar concern that any transaction other than a sale to Neighborhood Development Corp. reduces the availability of affordable housing and destabilizes the lives of Tenants and other low-income residents at the Property. The Property's tenants include chronically homeless adults with disabilities, many of whom require in-home nursing or weekly home visits by physicians. *See* Ex. B, Thomas Aff. ¶¶ 2, 6-7. The majority of the Property's tenants are people of color and/or people who receive a housing subsidy, many of whom have experienced homelessness before. *See* Ex. A, Ehrlich Aff. ¶¶ 8-9. Although the Property's tenants are some of the most vulnerable of Boston's population, they also are members of groups most likely to be rejected by private landlords. *Id*. at ¶¶ 6, 10. Indeed, the City has expressed fear "about the impact that the loss of the affordable housing at the Property could have on the Tenants and the surrounding neighborhood." *See* Joinder of the Department of Neighborhood Development of the City of Boston to Objection by Certain Tenants to Chapter 11 Trustee's Proposed Sale of Real Property, and Request for Relief from Deadlines Related to the Proposed Sale at ¶ 2 (Sept. 8, 2016), Docket No. 223. BPHC has likewise emphasized that its tenants, whose medical conditions would necessitate their management in a hospital or healthcare facility if they were homeless, cannot be readily relocated, and any attempt to do so would jeopardize their health and emotional stability. Ex. B, Thomas Aff. ¶¶ 10-11.

In a seminal case in this district, Judge James N. Gabriel approved a § 363 sale of a manufacturing plant to a lower bidder, because the lower bidder committed to rehiring the debtor's laid-off employees. Confirmatory Order Approving Sale of Assets to M.T.I. Holding

9

Corporation, *In re Morse Tool, Inc.*, No. 87-10588-CJK (Bankr. D. Mass. June 15, 1987). Judge Gabriel recognized that "the jobs promised by [the lower bidder] overcame the difference" in price. *Ruling Saves Jobs at New Bedford Tool Plant*, N.Y. Times, June 14, 1987. *See* Michael Kranish, *In Win For Labor, Judge Awards Morse Tool to Scottish Bidder*, Boston Globe, June 9, 1987, at 67 ("the future of the plant and the 375 jobs '[was] a very important factor' in [the judge's] decision").[3]

Recently, a Bankruptcy Court factored in a nonprofit bidder's commitment to developing a debtor's property into low-income housing in authorizing the trustee to enter into a purchase option agreement pursuant to § 363. *See* Order Granting Trustee's Motion for Order Authorizing Trustee to Enter Purchase Option and Purchase and Sale Agreements at 1-2, *In re Empyrean Towers, LLC*, No. 4:15-bk-42341 (Bankr. N.D. Cal. Mar. 4, 2016), Docket No. 303. The Empyrean Towers, a single-room occupancy building providing housing to low-income tenants, was in a state of despair, having accumulated hundreds of notices of health, safety, and other violations. *See* Trustee's Motion for Order Authorizing Trustee to Enter Purchase Option and Purchase and Sale Agreements at 2, *In re Empyrean Towers, LLC*, No. 4:15-bk-42341 (Bankr. N.D. Cal. Feb. 9, 2016), Docket No. 246. The trustee recommended the nonprofit purchaser's bid in large part because "the building would be expertly renovated, and the Empyrean Towers would provide affordable housing permanently to those most in need." *Id.* at 7. The City of Oakland also supported the nonprofit purchaser's bid, because the city was "in severe need of

---

[3] When approving the sale, Judge Gabriel ruled from the bench at a hearing on June 8, 1987. *See* Confirmatory Order Approving Sale of Assets to M.T.I. Holding Corporation, *In re Morse Tool, Inc.*, No. 87-10588-CJK (Bankr. D. Mass. June 15, 1987); Request for Expedited Hearing of Motion for Reconsideration, *In re Morse Tool, Inc.*, No. 87-10588-CJK (Bankr. D. Mass. June 12, 1987) ("On June 8, 1987, the Court approved from the bench a sale of certain of the assets of the Debtor . . . ."). Due to the age of the case, the case docket is not available electronically. The docket available in hard-copy did not contain a transcript of the June 8, 1987 hearing, nor was one able to be obtained.

10

affordable housing, and [could not] afford to lose what low-income housing it [did] have." City of Oakland's Statement in Support of Trustee's Motion for Order Authorizing Trustee to Enter Purchase Option and Purchase and Sale Agreements at ¶ 1, *In re Empyrean Towers, LLC*, No. 4:15-bk-42341 (Bankr. N.D. Cal. Feb. 25, 2016), Docket No. 271.  At the sale hearing, the Bankruptcy Court judge noted:

> "[W]hat is also unique about this property is there is a real opportunity for the City of Oakland and the tenants in this building, as well as . . . future tenants, to have a building . . . that would be dedicated for up to a fifty-five year period for low-income housing—but not just low-income housing, but housing that people would take pride in . . . . [T]his is something that adds value to this offer that might not be recognized in terms of dollars or cents to quantify it but from a social responsibility standpoint.  It is just a unique opportunity that can't be bypassed here. . . ."

Transcript of Hearing at 1:49:20-1:50:30, *In re Empyrean Towers, LLC*, No. 4:15-bk-42341 (Bankr. N.D. Cal. Mar. 1, 2016), Docket No. 299.

Here, like in *Empyrean Towers*, maintaining the Property as affordable housing fulfills a vital societal need for the Tenants and for future low-income residents of Boston.  "[F]rom a social responsibility standpoint," this public benefit adds substantial value to a transaction with Neighborhood Development Corp.  The City acknowledges that "given the projected housing needs of the [City of Boston]," and the mounting shortage of housing, it is absolutely imperative that the City preserve its current affordable housing stock; otherwise, "low-income residents in the future also may be deprived of an affordable place to live."  *See* Ex. C, Dillon Aff. ¶¶ 4-6.  Moreover, "the most stable privately-owned subsidized housing options in Boston . . . are owned by non-profit organizations or owners that have entered into long-term agreements to maintain the affordability of their units."  *Id.* at ¶ 6.  The City agrees that the sale to Neighborhood Development Corp. – a nonprofit organization that is committed to the long-term preservation of

11

affordable housing – would be "an invaluable contribution" to the City and "the health and welfare of its most vulnerable citizens." *Id.* at ¶ 9.

### III. <u>CONCLUSION</u>

The Trustee must consider the non-cash components of the Neighborhood Development Corp. bid, including the substantial value and benefit to the estate of the waiver of the Tenants' and BPHC's claims.

And of critical importance to this case is the fact that bankruptcy courts and trustees have long taken into account housing needs, public health benefits, environmental safety, employment security, and other compelling public interests in evaluating and approving sales pursuant to § 363. Here, both the Trustee and the Court have ample power and discretion to consider the potential consequences of the irreparable loss of affordable housing, in contrast to its assured preservation for the City of Boston, BPHC, and the Tenants, if the Neighborhood Development Corp. offer is recommended by the Trustee and approved by the Court.

Dated September 30, 2016

Respectfully submitted,

 /s/ Robert Sable
Robert Sable (BBO # 436980)
Greater Boston Legal Services
197 Friend Street, 9th Floor
Boston, MA 02114
(617) 603-1721
rsable@gbls.org


 /s/ Andrew M. Troop
Andrew M. Troop (BBO # 547179)
Christopher R. Mirick (BBO # 639683)
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 10036
(212) 858-1000
andrew.troop@pillsburylaw.com
christopher.mirick@pillsburylaw.com

*Attorneys for Darcell Hines, Joan Baez, Samantha Joutras, Francine Thurston, Richard McCray, Zachary Lane, Gerald Richardson, Timothy Smith, Tammy Strait, Dwight Sam, Fatima Morris, William Bautista, Tessy Adewumi, Miesha Warren, Troy Michael, Adryenne Furr, Felicia McLaurin, Frank Dubuisson, Angelia Brown, Charea Kersey, Clifton Townsend, Olga Rosado, Charles Gyukeri, Daniel Defaria, Sitarah Young, Starr Mosely, Carolyn Lewis, John Conlin, and Michele Madolo*


 /s/ John D. Hanify
John D. Hanify (BBO #219880)
Emily E. Gianetta (BBO #687585)
Erik N. Doughty (BBO #691487)
Jones Day
100 High Street, 21st Floor
Boston, Massachusetts 02110
(617) 449-6909
jhanify@jonesday.com
egianetta@jonesday.com
edoughty@jonesday.com

*Attorneys for Darcell Hines, William Bautista, and Carolyn Lewis*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of September 2016, I caused true and correct copies of the foregoing documents to be served via ECF on all parties registered to receive ECF notices in this case, and via first class mail, postage prepaid, on the Service List attached hereto.

Dated:  September 30, 2016
       Boston, Massachusetts

Respectfully Submitted

/s/ Emily E. Gianetta
Emily E. Gianetta (BBO #687585)
Jones Day
100 High Street, 21st Floor
Boston, Massachusetts 02110
(617) 449-6909
egianetta@jonesday.com

**SERVICE LIST**

Boston Gas
300 Erie Blvd W
Syracuse, NY 13202-4201

Brookline Bank
P.O. Box 2130
Buffalo, NY 14231-2130

CSC Logic
PO Box 1518
Coppell, TX 75019-1518

CWC Capital, LLC
63 Kendrick Street, Suite 1
Needham Heights, MA 02494-2708

Chase Commercial Term Lending
P.0. Box 9176
Coppell, TX 75019-9176

Discover Bank
PO Box 3025
New Albany, OH 43054-3025

Dorothy Bowen
c/o Patricia A. Whiting, Esq.
Harvard Legal Aid Bureau
23 Everett Street
Cambridge, MA 02138-2735

Focus Receivables Management LLC
1130 North Chase Parkway STE 150
Marietta GA 30067-6429

Greentree Servicing LLC
Bankruptcy Department
P O Box 6154
Rapid City SD 57709-6154

Holbrook Coorperative Bank
95 N. Franklin Street
Holbrook, MA 02343-1595

Home Depot/CitiBank
P.O. Box 6497
Sioux Falls, SD 57117-6497

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA 19101-7346

JPMorgan Chase Bank, N.A.
c/o White & Williams LLP
1650 Market Street, Suite 1800
Philadelphia, PA 19103-7304

Massachusetts Department of Revenue
Bankruptcy Unit
P.O. Box 9564
Boston, MA 02114-9564

Matthew P. Fitzsimmons, Esq.
25 Mid-Tech Drive
Suite F
West Yarmouth, MA 02673-2583

Melinda Stewart
112 Water Street, Suite 203
Boston, MA 02109-4225

Monica Long
99 Waldeck Street, #1
Dorchester, MA 02124-1337

NSTAR Gas Company and
NSTAR Electric Company
Attn Legal Collections
1 NSTAR Way NW 220
Westwood MA 02090-2341

RBS Citizens
1000 Lafayette Gill
Bridgeport, CT 06604-4725

Carolyn Lewis
101 Waldeck Street #2R
Dorchester, MA 02124-1336

Dania Rosario
25 Orlando Street #1
Dorchester, MA 02126-1768

Darcell Hines
93 Waldeck Street 1F
Dorchester, MA 02124-1330

Uwagboe O. Oru-Lawrence
35 Orlando Street, Unit 6
Mattapan, MA 02126-1771

Paula R.C. Bachtell
U.S. Department of Justice
Office of the United States Trustee
John W. McCormack Post Office and
Courthouse
5 Post Office Square, Suite 1000
Boston, MA 02109-3934

Eric K. Bradford
Office of the United States Trustee
5 Post Office Square
10th Floor, Suite 1000
Boston, MA 02109-3934

David B. Chaffin
White and Williams LLP
99 Summer Street
Suite 1530
Boston, MA 02110

Ronald W. Dunbar, Jr.
197 Portland Street
5th Floor
Boston, MA 02114

John Fitzgerald
Office of the US Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA 02109

William Bautista
93 Waldeck Street #1
Dorchester, MA 02124-1330

Boston Water and Sewer Commission
Jorge A. Porras, Esq.
BWCS 980 Harrison Avenue
Boston, MA 02119

Katherine R. Ward
c/o Stephen R. Whitman Esq
197 Portland Street
Boston, MA 02114

Jason Giguere
Harmon Law Offices, P.C.
P.O. Box 610389
Newton Highlands, MA 02461

John Houton
CITY OF BOSTON
ASSISTANT CORPORATON COUNSEL
CITY HALL ROOM M-5
ONE CITY HALL SQUARE
BOSTON, MA 02201

Joshua Krefetz
Krefetz, Seed & Chan
244 Brighton Avenue
Suite 105
Allston, MA 02134

Timothy M. Mauser
Law Office of Timothy Mauser, Esq.
Suite 410
10 Liberty Street
Danvers, MA 02108

Matthew J. McGowan
Salter, McGowan, Sylvia & Leonard, Inc.,
321 South Main Street
Suite 301
Providence, RI 02903

2

Joseph G. Butler
Law Office of Joseph G. Butler
355 Providence Highway
Westwood, MA 02090

Richard T. Mulligan
Harmon Law Offices, P.C.
P.O. Box 610389
Newton Highlands, MA 02461-0345

Robert Sable
Greater Boston Legal Services
197 Friend Street
Boston, MA 02114

Kendin Carr
Realm Realty Group
139 W. 9th Street
Boston, MA 02127

Timothy J Harrington
General Counsel
Boston Public Health Commission
1010 Massachusetts Ave, 6th Floor
Boston, MA 02118

Verdolino & Lowey, P.C.
124 Washington Street
Suite 301
Foxborough, MA 02035

Department of Neighborhood Development of the City of Boston
c/o Sheila A. Dillon
26 Court Street, 8th, 9th, and 11th Floor
Boston, MA 02108-2501

Discover Financial Services
P.O. Box 15316  Wilmington, DE 19850

Green Tree
Attn: Bankruptcy Dept
P.O. Box 6154
Rapid City, SD 57709

Thomas M. Pinney
White and Williams L.L.P.
1650 Market Street
Suite 1800
Philadelphia, PA 19103

James Southard
PO Box 540540
Waltham, MA 02454

Aeneas 4 LLC
c/o George Dabney
Pangea Management Corporation
891 Centre Street, Lower Level
Jamaica Plain, MA 02130

3

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

IRS
PO BOX 9112 JFK BLDG
Boston MA 02203
STOP 20800

Nation Star Mortgage
PO Box 619096
Dallas, TX 75261-9741

Nationstar Mortgage LLC
PO Box 619096
Dallas, Texas 75261-9741

Orlando Street Note Purchaser LLC
132 Lincoln Street
Boston, MA 02111

Ronald Dunbar, Esq.
197 Portland Street, 5th floor
Boston, MA 02114

Ronald W. Dunbar, Jr.
Dunbar Law P.C.
197 Portland Street
Boston, MA 02114

Spring Hill Realty Partners IV, LLC
c/o David Himelfarb
McCarter & English, LLP
265 Franklin Street
Boston, MA 02110

Spring Hill Realty Partners IV LLC
c/o Dunbar Law P.C.
197 Portland Street
Boston, MA 02114