# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

In re:

Uwagboe O. Oru-Lawrence,

Debtor.

: Chapter 11
: Case No. 13017250-MSH

## AFFIDAVIT OF DAVID THOMAS

I, on oath, depose and state as follows:

1. I am the Director of Permanent Housing and Clinical Services (the "Program") for the Homeless Services Bureau of the Boston Public Health Commission ("Commission"). The Commission is charged with the responsibility of protecting, preserving and promoting the health and wellbeing of Boston residents. Our mission is particularly directed to those residents who are the most vulnerable. Our clients suffer with mental and physical disabilities as well as other medical conditions and their economic circumstances would otherwise cause them to be homeless but for the Program.

2. Many of the Program's clients are residents of debtor's properties whose medical conditions, if homeless, would necessitate their management in a hospital or health care facility. The Program places into long-term housing two very vulnerable cohorts of the Boston's homeless population: chronically homeless adults with disabilities (often more than one disability) and high utilizers of emergency services. The overarching goal of the Program is to offer the stability of permanent housing so that service providers can more effectively address

clients' mental, physical, and emotional disabilities with intensive stabilization, case management services, and individualized, community-based services.

3. The Commission fully funds the Program's housing initiative, with the assistance from various local city agencies and non-profit organizations.

4. Under the Program, the Commission enters into lease agreements with private landlords and makes monthly payments to satisfy the rental obligations under those leases. The clients then receive housing vouchers evidencing their entitlement to participate in the Program.

5. The Commission has entered into lease agreements with this Debtor for the benefit of eleven clients who are mentally, physically and/or emotionally disabled and who are currently living in the Waldeck and Orlando Street properties ("Properties") owned by the Debtor. Without describing the circumstances of every such person living at the Debtor's Properties under the Program, I offer an insight into the lives of three of our clients whose circumstances are fairly representative of the clients now living at the Property.

6. "Adam"[1] has a history of chronic alcoholism and Major Depressive Disorder. For over six (6) years, he was homeless, sleeping at night in various shelters, emergency rooms, or on the street. In May of 2014, the Program was able to offer Adam a home at one of the Properties. Adam requires regular in-home nursing for medication-assisted treatment. In addition, an outreach worker from the Program visits weekly to provide Adam support in attending community recovery meetings.

7. "Alex" has a history of chronic alcoholism and generalized anxiety disorder. Alex was homeless for over ten (10) years prior to being housed in May of 2014 at one of the Properties. Alex requires weekly home visits from a doctor from Healthcare for the Homeless

---

[1] Client names have been changed to protect their privacy.

2

due to Alex's inability to tolerate clinic settings. Additionally, a Program case manager provides sobriety support at Alex's home several times per week.

8. "Andy" has a history of chronic opiate abuse co-occurring with Major Depressive Disorder. Andy was homeless for over five (5) years prior to being housed in one of the Properties in April of 2015. Andy requires regular in-home nursing for medication-assisted treatment. In addition, a Program case manager conducts home visits multiple times per week to support Andy in community employment.

9. Clients qualify for the Program if they are deemed high utilizers of emergency services ("HUES"). Individuals who present to the City of Boston's emergency room departments at least ten (10) times within a six (6) month period fall within the definition of HUES.

10. The current fair market rental limit on individual subsidies is capped at $1,261.00 for a one-bedroom apartment. This limit is less than half the average market rent in all of Boston. Overall rental vacancy rates in Boston are less than 2%, making the likelihood that this very vulnerable population will be able to obtain alternative housing extremely remote.

11. Due to the lack of alternative housing, this population cannot be readily relocated. Moreover, any such effort, even if practically possible, would cause very severe emotional consequences for these clients, disrupting their health, their care, the services now delivered to them and their emotional stability and compromising the very material gains that have been made through this Program.

_____, LICSW
David Thomas

Dated: September 29, 2016

3