## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

-------------------------------------------------------------x

In re:                                                    :
                                                          : Chapter 11
Uwagboe O. Oru-Lawerence,                                 : Case No. 13-17250-MSH
                                                          :
Debtor.                                                   :

-------------------------------------------------------------x

### REQUEST OF TENANT LUIS VELASQUEZ
### FOR ALLOWANCE AND PAYMENT OF
### <u>ADMINISTRATIVE EXPENSES PURSUANT TO 11 U.S.C. §503(b)</u>

To the Honorable Melvin S. Hoffman, Chief United States Bankruptcy Court Judge:

Luis Velasquez is a tenant currently residing in residential real property previously owned by the debtor, Uwagaboe O. Oru Lawrence a/k/a Uwa Lawrence, Uwa Oru- Lawrence, Uwagboe Orumwense Lawrence, Uwagboe Oru-Lawrence (the "Debtor"), and such real property was part of the Debtor's bankruptcy estate. Mr. Velasquez hereby requests allowance and payment of his administrative expense claims against the Debtor and his estate pursuant to 11 U.S.C. §503(b). In support of this request, Mr. Velasquez state as follows, and submits the attached Declaration.

### <u>Case Status</u>

1.      On December 19, 2013 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§101 *et seq*.

2.      Mr. Velasquez and the other Tenants learned of the bankruptcy filing in May of 2016. As with the other tenants living in the Debtor's properties, this case was concealed from Mr. Velasquez; no tenant was listed in the Debtor's bankruptcy schedules; no tenant was given notice of this case; and none of the leases was listed. Counsel from Greater Boston Legal Services

learned of the Chapter 11 case in the course of representing tenants in cases pending in state

court. Greater Boston Legal Services informed Mr. Velasquez's attorney, who then filed a

suggestion of bankruptcy in the state court case the Debtor had filed against Mr. Velasquez.

3.       Several other tenants of the Debtor filed their request for Administrative expenses on

August 26, 2016 (Document 205). Mr. Velasquez's claims were not part of that request and

although his claims arise out of similar facts he has elected to file this request for his claims. This

Court has set March 7, 2017 as the deadline for filing claims in this matter.

**The Debtor's Post-Petition Breaches of Obligations**
**<u>Owed to Mr. Velasquez</u>**

4.       Since the Petition Date, Mr. Velasquez has rented Apartment 2F (hereinafter

"Apartment") at 101 Waldeck Street, in Dorchester Massachusetts, a residential building

previously owned by the Debtor and part of the assets in this bankruptcy matter.

5.       Mr. Velasquez is permanently disabled and his rent is paid subject to a Section 8 housing

voucher administered by the Boston Housing Authority. Mr. Velasquez had a lease for the

Apartment with the Debtor and the Boston Housing Authority and Debtor had signed a contract

for the Section 8 payments.

6.       Since the Petition Date, the Debtor or his estate has received rental payments for the

Apartment and subsidized rental payments. The rental payments were stopped by the Boston

Housing Authority as the result of the Debtor's failure to keep the Apartment and building in

compliance with applicable codes, rules and regulations governing health and safety

(collectively, the "Codes").

7.       Since the Petition Date, the Debtor has breached contractual, statutory and common law

obligations owed to Mr. Velasquez. As a result, he has claims against the Debtor, which have

arisen since the Petition Date, including for: interference with quiet enjoyment and interference

with utilities, in violation of M.G.L. c. 186, § 14; breach of contract; breach of the common-law

implied warranty of habitability; violation of the Consumer Protection Act, M.G.L. c. 93A;

retaliation, in violation of M.G.L. c. 186, § 18; violation of the security deposit and last month's

rent law, M.G.L. c. 186, § 15B; negligent and intentional infliction of emotional distress;

negligence; fraud; and, discrimination in violation of M.G.L. c. 151B § 4.

8.      Mr. Velasquez has incurred damages of at least $359,319.87 in addition to a reasonable

attorney's fee and costs. The statutory fee shifting provisions in the claims bought by Mr.

Velasquez provide for a mandatory award of attorney fees under the quiet enjoyment statute,

M.G.L. c. 186, § 14; the Consumer Protection Law, M.G.L. c. 93A; and the security deposit law,

M.G.L. c. 186, § 15B.

9.      Mr. Velasquez has attached a Declaration detailing the relevant facts associated with his

claims and a spreadsheet detailing the damage calculations. See **Exhibit 1**. The spreadsheet is in

the same format at the prior tenant spreadsheets, adjusted the reflect Mr. Velasquez's specific

damages. The damages Spreadsheet is attached as **Exhibit 2**.

## Mr. Velasquez's Claims Are Administrative Expenses

10.     These claims by Mr. Velasquez against the Debtor and his estate, based on post-petition

breaches of obligations owed to Mr. Velasquez, are entitled to priority as administrative

expenses under 11 U.S.C. §503(b).

11.     A claim qualifies for administrative expense "if (1) the right to payment arose from a

postpetition transaction with the debtor estate, rather than from a prepetition transaction with the

debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of

the debtor." *In re Hemingway Transp., Inc*., 954 F. 2d 1, 5 (1stCir. 1992), cert. denied, 510 U.S.

914(1993). "With respect to an executory contract, the focus is on whether the debtor used the nondebtor's property in the ordinary course of its business, and continued to receive and accept the nondebtor's performance." *In re Enron Corp*., 279 B.R. 79, 87 (Bankr. S.D.N.Y. 2002) (*citing In re Patient Educ. Media*, 221 B.R. 97, 102 (Bankr. S.D.N.Y. 1998) (emphasis in the original) (internal quotations omitted); *see also In re Mammoth Mart Inc*., 536 F.2d 950, 954 (1st Cir. 1976) (the proper focus in determining whether a creditor's claim arose out of a transaction with the estate is whether the debtor in possession "induced" the post-petition transaction); *Adelphia Business Solutions, Inc*., 296 B.R. 656, 665 (Bankr. S.D.N.Y. 2003) (the "inducement" requirement must be construed with "common sense" to "require administrative expense treatment where the post-petition benefit is *knowingly accepted and desired*, postpetition, by the post-petition debtor-in-possession.") (emphasis added).

12.     Mr. Velasquez's claims easily satisfy these requirements for administrative expense priority. The Debtor was in the business of leasing property to tenants, including Mr. Velasquez and several other Section 8 tenants, and, after the Petition Date, ""he continued to receive and accept the nondebtor's performance" in the ordinary course of his business. *Enron*, 279 B.R. at 87. Mr. Velasquez, and BHA on behalf of Mr. Velasquez, both made monthly payments to the Debtor so that Mr. Velasquez could reside in the Apartment pursuant to the Section 8 lease renewals that were entered into after the Petition Date. These transactions were, from every practical perspective, "induced" by the Debtor. *Mammoth Mart*, 536 F.2d at 954. The Debtor was paid rent, and "knowingly accepted and desired" this rent, from Mr. Velasquez post-petition. *Adelphia*, 296 B.R. at 665. It is beyond dispute that the rent paid "was beneficial to the estate of the debtor"; he kept the payments. *Hemingway Transp*., Inc. 954 F. 2d at 5.

## Conclusion

13.     Mr. Velasquez's claims arose after the Petition Date, from post-petitions transactions with the Debtor, where the Debtor accepted and retained payment pursuant to a lease and for his promise to provide housing to Mr. Velasquez that complied with the requirements of the State Sanitary Code and the statutory and common law. Instead the Debtor provided an illegal unit, with no certificate of occupancy, multiple code violations and hazardous condition, and significant violations of landlord tenant law and Consumer Protection Law, M.G.L. c. 93A. The claims arising from those breaches are administrative expense claims under 11 U.S.C. §503(b).

## Relief Requested

**WHEREFORE,** Mr. Velasquez requests that the Court:

A. Find that the claims against the Debtor and his estate for breach are entitled to administrative expense priority under 11 U.S.C. §503(b);

B. Liquidate the amount of those claims after trial or in such amount as may be agreed to by Mr. Velasquez and the Trustee;

C. Order the payment of these claims as allowed; and

D. Grant such other relief as is just and proper.

Respectfully submitted,
**Luis Velasquez**,
By his attorney,

Edward Rice Esq. BBO# 637513
45 Pierce Street
Malden MA 02148
Tel. 617.475.0909
Ed@EdRiceLaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of March 2017, I caused true and correct copies of the foregoing document to be served via ECF on all parties registered to receive ECF notices in this case, and via first class mail, postage prepaid, on the Service List below.

Dated March 7, 2017

Respectfully Submitted

Edward Rice Esq. BBO# 637513
45 Pierce Street
Malden MA 02148
Tel. 617.475.0909
Ed@EdRiceLaw.com

## SERVICE LIST

Boston Gas
300 Erie Blvd W
Syracuse, NY 13202-4201

Brookline Bank
P.O .Box 2130
Buffalo, NY 14231-2130

CSC  Logic
P O B ox 1518
Coppell, TX 75019-1518

CWC Capital, L L C
63Kendrick Street, Suite 1
Needham Heights,  MA 02494-2708

Chase Commercial Term Lending
P.0. Box 9176
Coppell, TX 75019-9176

Discover Bank
PO Box 3025
New Albany, OH 43054-3025
Dorothy Bowen
c/o Patricia A. Whiting, Esq.
Harvard Legal Aid Bureau
23 Everett Street
Cambridge, MA 02138-2735

Focus Receivables Management LLC
1130 North Chase Parkway STE 150
Marietta GA 30067-6429

Greentree Servicing LLC
Bankruptcy Department
P O Box 6154
Rapid City SD 57709-6154

Holbrook Cooperative Bank
95 N. Franklin Street
Holbrook, MA 02343-1595

Home Depot/CitiBank
P.O. Box 6497
Sioux Falls, SD 57117-6497

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346

Philadelphia, PA 19101-7346
JPMorgan Chase Bank, N.A.
c/o White & Williams LLP
1650 Market Street, Suite 1800
Philadelphia, PA 19103-7304

Massachusetts Department of Revenue
Bankruptcy Unit
P.O. Box 9564
Boston, MA 02114-9564

Matthew P. Fitzsimmons, Esq.
25 Mid-Tech Drive
Suite F
West Yarmouth, MA 02673-2583

Melinda Stewart
112 Water Street, Suite 203
Boston, MA 02109-4225

Monica Long
99 Waldeck Street, #1
Dorchester, MA 02124-1337

NSTAR Gas Company and
NSTAR Electric Company
Attn Legal Collections
1 NSTAR Way NW 220
Westwood MA 02090-2341

RBS Citizens
1000 Lafayette Gill
Bridgeport, CT 06604-4725

Carolyn Lewis
101 Waldeck Street #2R
Dorchester, MA 02124-1336

Dania Rosario
25 Orlando Street #1
Dorchester, MA 02126-1768

Darcell Hines
93 Waldeck Street 1F
Dorchester, MA 02124-1330

Uwagboe O. Oru-Lawrence
35 Orlando Street, Unit 6
Mattapan, MA 02126-1771

William Bautista
93 Waldeck Street #1
Dorchester, MA 02124-1330

Boston Water and Sewer Commission
Jorge A. Porras, Esq.
BWCS 980 Harrison Avenue
Boston, MA 02119

Katherine R. Ward
c/o Stephen R. Whitman Esq
197 Portland Street
Boston, MA 02114

Paula R.C. Bachtell
U.S. Department of Justice
Office of the United States Trustee
John W. McCormack Post Office and Courthouse
5 Post Office Square, Suite 1000
Boston, MA 02109-3934

Eric K. Bradford
Office of the United States Trustee
5 Post Office Square
10th Floor, Suite 1000
Boston, MA 02109-3934

David B. Chaffin
White and Williams LLP
99 Summer Street  Suite 1530
Boston, MA 02110

Ronald W. Dunbar, Jr.
197 Portland Street 5th Floor
Boston, MA 02114

John Fitzgerald
Office of the US Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA 02109

Jason Giguere
Harmon Law Offices, P.C.
P.O. Box 610389
Newton Highlands, MA 02461

John Houton
CITY OF BOSTON
Assistant Corp. Counsel
City Hall Room M-5
One City Hall Square
Boston, MA 02201

Joshua Krefetz
Krefetz, Seed & Chan
244 Brighton Avenue
Suite 105
Allston, MA 02134

Timothy M. Mauser
Law Office of Timothy Mauser, Esq.
Suite 410
10 Liberty Street
Danvers, MA 02108

Matthew J. McGowan
Salter, McGowan, Sylvia & Leonard, Inc.,
321 South Main Street
Suite 301
Providence, RI 02903

Joseph G. Butler
Law Office of Joseph G. Butler
355 Providence Highway
Westwood, MA 02090

Richard T. Mulligan
Harmon Law Offices, P.C.
P.O. Box 610389
Newton Highlands, MA 02461-0345

Thomas M. Pinney
White and Williams L.L.P.
1650 Market Street
Suite 1800
Philadelphia, PA 19103

Robert Sable
Greater Boston Legal Services
197 Friend Street
Boston, MA 02114

James Southard
PO Box 540540
Waltham MA 02454

Aeneas 4 LLC
c/o George Dabney
Pangea Management Corp
891 Center Street. Lower Level
Jamaica Plain MA 02130

# EXHIBIT 1
## Affidavit of Tenant
## Luis Velasquez

## AFFIDAVIT OF LUIS VELASQUEZ

I, Luis Velasquez, hereby attest to the following based on personal knowledge:

1.      My Name is Luis Velasquez.

2.      I live at 101 Waldeck Street #2f in Boston Massachusetts (hereinafter "Apartment"). I

have lived in this Apartment since August 2011.

3.      I have Section 8 housing administered by the Boston Housing Authority ("BHA") and

had a lease with Uwagboe Oru-Lawrence, who was my landlord until the property was

sold as part of these bankruptcy proceedings.

4.      My Section 8 subsidy pays a portion of my monthly rent, I pay the remainder of my rent,

calculated based on my income. The full contract rent for my Apartment originally was

$1074 pursuant to my August 2011 lease.

5.      My gross rent was adjusted to $1,125 starting August, 2014, and as of August, 2015 it

was adjusted to $1,141.

6.      When I first moved in I had to pay one month's rent to Mr. Lawrence for security deposit

in the amount of $1074. He told me this after I moved in and we had already signed the

lease and he told me I would have to leave if I did not pay it.

7.      I am permanently disabled, with an permanent back injury, mobility issues that require

me to use a cane or a walker, I also have a seizure disorder which is partially controlled

by twice daily medication, and I have COPD which requires that I use an oxygen tank to

breath.

8.      I live in my Apartment with my wife, Luz Angela Velasquez who is also permanently

disabled due to mental health issues, she has limited capacity and is illiterate.

Page 1 of 7

9.      Between January 1, 2014 and December 2016 my Apartment had the following

conditions in need of repair:

       a.  Kitchen sink leaks;
       b.  Bathroom sink leaks;
       c.  Non-functioning oven;
       d.  Broken/missing window screens;
       e.  Mice holes throughout;
       f.  Window not secure, does not fully close;
       g.  Leak in ceiling;
       h.  Mice infestation;
       i.  Roach infestation;
       j.  Circuit breakers and electricity shut of frequently;
       k.  Hot water not functioning properly- often periods of no hot water;
       l.  Heat not functioning properly- often periods of no heat ; and
       m.  Cracked tiles on floor.

10.     Each apartment at 101 Waldeck, except the first floor, were illegally divided in to

multiple units. On the second floor, where I live, the one legal apartment was divided into

two apartments without any permits or certificate of occupancy. Mr. Lawrence rented out

both illegal apartments.

11.     Mr. Lawrence knew about each of the conditions listed above; however, he did not repair

them. Both the City of Boston Inspectional Services ("ISD") and the BHA notified Mr.

Lawrence of these conditions which are violations of the state sanitary code.

12.     ISD filed a case against Mr. Lawrence due to these unrepaired code violations and

substandard housing conditions. See Boston Housing Court Docket No. 16H84CV0109.

Mr. Lawrence was ordered to repair the building and my Apartment but he did not do so.

13.     After BHA notified Mr. Lawrence that he was in violation for failing to repair the

conditions in the Apartment, Mr. Lawrence then served me with a Notice, dated February

12, 2016, to begin eviction proceedings.

14.  Two days later Mr. Lawrence had the heat shut off for my Apartment on a weekend with record breaking low temperatures.

15.  ISD came to the Apartment on February 14, 2016 and documented the non-functioning radiators and the interior temperature of 51 degrees, even with space heaters in the unit. ISD ordered Mr. Lawrence to fix the heat.

16.  Due to the lack of heat I had trouble breathing due to my COPD and the complications from the cold, I collapsed and had a seizure and was taken by ambulance the hospital. I was admitted to the hospital for several days.

17.  When ISD returned to re-inspect to see if the heat was fixed, Mr. Lawrence refused to allow ISD back in the property. ISD then brought a court case against the him.

18.  On February 18, 2016 I was release from the hospital and returned to the Apartment but the conditions had still not been repaired and I continued to use space heaters.

19.  Eventually the heat was turned back on, but on several occasions that winter Mr. Lawrence turned the heat off again for a few days at a time.

20.  The heat in the building was not controllable from my Apartment. The heat would often be above 80 degrees and would impact my breathing and the breathing difficulties would trigger seizures. To help lower the heat we would open windows and when Mr. Lawrence would see the window open he would respond by shutting off the heat. Typically, on weekends so we could not call ISD to complain. I was take to the hospitably ambulance on about 6 to 10 times each winter due to Mr. Lawrence shutting off the heat.

21.  During the last week of May 2016 and the first week of June 2016, Mr. Lawrence's son repeatedly came to my Apartment and would enter without notice and yell at me to leave and move out. He made me feel threatened and I was afraid that he would physically hurt

me. Even when my door was locked I was never sure if he would come in without permission.

22.    On multiple occasions in the first two weeks of July 2016, Mr. Lawrence came to the building with another man and intimidated and harassed me.

23.    On August 19, 2016, Mr. Lawrence came to my Apartment and threatened me saying that if I would not move out and continued to fight him in court he would make me move out. I took this to mean he would physically remove me from the property.  Mr. Lawrence would come up to me I could not do much to defend myself because of my mobility issues and the need to have the oxygen tank.

24.    I was paying electric service for the other unit on the second floor as a result of the illegal creation multiple units. Mr. Lawrence took wires from my unit to other units to supply the illegal units.

25.    I know the electricity was on my meter because when the electric breaker would trip it would cut off service in both my Apartment and in the other second floor unit. Her electricity meter was also mixed up because not all the lights would turn off when my meter was shut off.

26.    When I would complain to Mr. Lawrence about the electric usage and bills he would shut my electric off and lock the basement door. With the basement door locked I could not turn the breaker back on until Mr. Lawrence decided to let me back into the basement.

27.     When the electricity was off my oxygen machine would not work and I was admitted to the hospital on 3 or 4 occasions due to this. I did not always end up in the hospital because if Mr. Lawrence would turn the electric back on soon enough my oxygen could run off batteries but that is only possible for a few hours.

28.   I had to get a cat due to the constant mouse infestation and Mr. Lawrence charged me $25 a month for the cat's rent. Mr. Lawrence said he would take my cat and throw it in the street if I did not give him the $25 each month.

29.   The mouse infestation was so bad that my wife and I would find live mice, mice droppings, and dead mice on a daily basis. Sometime the hallway would smell due to the dead animals in the basement.

30.   The basement was full of garbage, broken appliances, and other boxes that belonged to Mr. Lawrence and was home to many rodents. There would often be dead rodents on the stairs.

31.   Throughout the whole time Mr. Lawrence was my landlord my hot water would not consistently work. Sometimes only cold water came out of the hot faucet and sometimes no water came out. I repeatedly ask Mr. Lawrence to fix it but he would only occasionally and temporarily fix it. It would last a few days to a few weeks before it would stop working again. I reported the issues with the hot water to my case worker and to the City of Boston ISD inspectors. We would have to heat the water on the stove.

32.   In about 2014 my oven stopped working and would leak gas. I passed out and the fire department came. Mr. Lawrence did not fix the oven so I had to stop using the oven and could only use the burners.

33.   There are several broken and cracked tiles in my Apartment. Because I need a cane or a walker to move around this is very dangerous as it causes me to trip and fall on more than one occasion. I have asked Mr. Lawrence to fix them and ISD has ordered him to fix this but he has not. I had to cover some with tape and cardboard so that I can more safely move about in my Apartment.

34.    Mr. Lawrence would come into my Apartment without permission on many occasions.

He would claim he was going to check something, like the radiators or the windows. But

then he would look through my things and threaten me and say that he was going to

throw me out of the Apartment or make me lose my Section 8. Sometimes he would give

me papers that said I had to move but when I showed them to the ISD inspector I was

told they were not legitimate court papers.

35.    In September of 2016, Mr. Lawrence again came into my apartment without notice or my

permission. I told the ISD inspector and they told me that it was illegal and that I could

change my locks. I changed my lock and Mr. Lawrence then broke my lock to get into

my Apartment. He repeatedly yelled at me to leave the Apartment and to give him

money.

36.    Mr. Lawrence pushed me in December of 2016 while I was in my Apartment. I called the

police and Mr. Lawrence left and went to a different floor in the building and then told

the police that he didn't do anything.

37.    I felt scared because I never knew when he was going to come in to my Apartment and

what he was going to do when he came to my Apartment. I didn't want to make him mad

because he would shut off the heat, hot water, or electric to punish me. But I also needed

to tell him about the things that he needed to fix. Even when my social worker helped me

connect with the ISD inspector Mr. Lawrence was still coming after me to retaliate. I told

the ISD inspector and they said that it was illegal but Mr. Lawrence didn't stop.

38.    The stress, threats and harassment from Mr. Lawrence, plus the bad conditions, and

utility issues caused my medical conditions to get much worse and caused repeated

seizures that were previously better controlled with medication. In my prior apartment, I didn't have this kind of problem or these kinds of hospitalizations.

39.    I wanted to move but due to my mobility issues and needing the oxygen tank it has been very hard to find a new place.

Signed under the pains and penalties of perjury this 7th day of March, 2017.

Luis Velasquez

# EXHIBIT 2
## Damages Spreadsheet
## Luis Velasquez

| Tenant | Unit | Contract Rent ($) up to July 2014 | Contract Rent ($) Aug 2014- July 2015 | Contract Rent ($) as of Aug 2015 | Abatement / Diminution of value (%) | Months in Occupancy Post-Petition | Implied warranty of habitability (IWH) ($) (=_actual damages_) | Utilities violation (cross-metering) ($) (=3*K rent) | Retaliation ($) (=3*K rent) | Security Deposit and LMR ($) | Sec. Deposit - Interest ($) | Emotional Distress | Overpaid Pet Rent ($) | Total w/93A 3x multiplier |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Luis Velasquez | 2F | 1074 | 1125 | 1141 | 100 | 36 | 40348 | 3423 | 3423 | 1074 | 169.29 | 75000 | 900 | $359,319.87 |